Vamsidhar Vurimindi,
Plaintiff, Pro Se
821 Gunter Street
Austin, TX 78702
Telephone: 737-262-3477
Email: Vamsidhar.R.Vurimindi2021@GMail.com

FILED

25 JAN -7  AM 9: 55

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

CVR

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| VAMSIDHAR VURIMINDI,<br>821 Gunter Street,<br>Austin, TX 78702.<br><div align="center">Plaintiff</div><br><div align="center">Vs.</div><br>UNITED STATES OF AMERICA,<br>C/o. Federal Tort Claims Act Section,<br>Torts Branch, Civil Division<br>U.S. Department of Justice ("DOJ")<br>175 N Street, NE<br>Washington, DC 20002;<br><div align="right">AND</div><br>MERRICK GARLAND,<br>U.S. Attorney General,<br>U.S. Department of Justice ("DOJ")<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001;<br><div align="right">AND</div><br>ALEJANDRO MAYORKAS,<br>Secretary,<br>U.S. Department of Homeland<br>Security, ("DHS")<br>MS 0525,<br>2707 Martin Luther King Jr Ave SE<br>Washington, DC 20528-0525;<br><div align="right">AND</div><br>PATRICK LECHLEITNER,<br>Director, | Case No.: 1:25CV00023 DII<br><br>COMPLAINT FOR VIOLATIONS OF THE FOURTH, FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION (BIVENS V. SIX UNKNOWN NAMED AGENTS OF FEDERAL BUREAU OF NARCOTICS; 42 U.S.C. § 1983); ABUSE OF PROCESS, FALSE IMPRISONMENT; WRONGFUL DEPORTATION; SLANDER; DEFAMATION; LIBEL; NEGLIGENCE; INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS<br><br>DEMAND FOR JURY TRIAL |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| U.S. Immigration and Customs Enforcement ("ICE"), 500 12th Street, S.W. Stop 5010, Washington, D.C. 20536-5010; <div align="right">AND</div> RUSSELL HOTT, Director, Office of Detention and Removal, U.S. Immigration and Customs Enforcement ("ICE"), 500 12th Street, S.W. Stop 5010, Washington, D.C. 20536-5010; <div align="right">AND</div> THOMAS DECKER, Director, Field Office, U.S. Immigration and Customs Enforcement ("ICE"), 114 North 8th Street, Philadelphia, PA 19107; <div align="right">AND</div> JENNIFER RITCHEY, Deputy Director, Field Office, U.S. Immigration and Customs Enforcement ("ICE"), 114 North 8th Street, Philadelphia, PA 19107; <div align="right">AND</div> SEAN ERVIN, Director, Field Office, U.S. Immigration and Customs Enforcement ("ICE"), 114 North 8th Street, Philadelphia, PA 19107; <div align="right">AND</div> AGENT#7627, Supervisory Detention and | |

| | |
|---|---|
| **IN THE UNITED STATES DISTRICT COURT** **FOR THE WESTERN DISTRICT OF TEXAS** | |
| U.S. Immigration and Customs Enforcement ("ICE"), 1777 NE Loop 410, 15th Floor, San Antonio, TX 78217; <br><br> AND <br><br> OFFICER ELOVA, Enforcement Officer, U.S. Immigration and Customs Enforcement ("ICE"), 3600 Presidential Blvd. Ste. 111 Austin, TX 78719; <br><br> AND <br><br> JOHN-DOE, Director, Field Office, U.S. Immigration and Customs Enforcement ("ICE"), 202 Metroplex Drive Pearl, MS 39208; <br><br> AND <br><br> DANIEL BIBLE, Director, Field Office, U.S. Immigration and Customs Enforcement ("ICE"), 126 North Point Dr, Houston, TX 77060; <br><br> AND <br><br> JOSE CORREA, Director, Field Office, U.S. Immigration and Customs Enforcement ("ICE"), 1777 NE Loop 410, 15th Floor, San Antonio, TX 78217; <br><br> AND <br><br> JOANN McLANE, Chief Counsel for San Antonio Office of the Principal Legal Advisor | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

Deportation Officer,
U.S. Immigration and Customs
Enforcement ("ICE"),
1605 Clugston Road,
York, PA 17404;

AND

CHRIS HOFFMAN,
Enforcement Officer,
U.S. Immigration and Customs
Enforcement ("ICE"),
1605 Clugston Road,
York, PA 17404;

AND

AGENT# 6230, J.RIED,
Enforcement Officer,
U.S. Immigration and Customs
Enforcement ("ICE"),
1605 Clugston Road,
York, PA 17404;

AND

ROBERT WRIGHT,
Enforcement Officer,
U.S. Immigration and Customs
Enforcement ("ICE"),
114 North 8th Street,
Philadelphia, PA 19107;

AND

JOHN RIFE,
Enforcement Officer,
U.S. Immigration and Customs
Enforcement ("ICE"),
114 North 8th Street,
Philadelphia, PA 19107;

AND

OFFICER PINOSA,
Enforcement Officer,

| IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS | |
| --- | --- |
| (OPLA),<br>U.S. Immigration and Customs Enforcement ("ICE"),<br>1015 Jackson-Keller Road, Suite 100<br>San Antonio, TX 78213;<br><div align="right">AND</div><br>KERRY DOYLE,<br>Principal Legal Advisor,<br>Office of the Principal Legal Advisor (OPLA),<br>U.S. Immigration and Customs Enforcement ("ICE"),<br>500 12th St SW<br>Washington, DC 20536;<br><div align="right">AND</div><br>DAVID NEAL,<br>Director<br>Executive Office for Immigration Review ("EOIR"),<br>5107 Leesburg Pike,<br>Falls Church, VA 22041;<br><div align="right">AND</div><br>MARY CHENG,<br>Acting Director,<br>Executive Office for Immigration Review ("EOIR"),<br>5107 Leesburg Pike,<br>Falls Church, VA 22041;<br><div align="right">AND</div><br>SHEILA McNULTY<br>Chief Immigration Judge<br>Executive Office for Immigration Review ("EOIR"),<br>5107 Leesburg Pike,<br>Falls Church, Virginia 22041;<br><div align="right">AND</div> | |

| IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TEXAS | |
|---|---|
| DANIEL WEISS, Chief Immigration Judge, Executive Office for Immigration Review ("EOIR"), 5107 Leesburg Pike, Suite 2500 Falls Church, Virginia 22041; <div align="right">AND</div> DAVID WETMORE, Chief Appellate Immigration Judge Board of Immigration Appeals ("BIA"), 5107 Leesburg Pike, Falls Church, Virginia 22041; <div align="right">AND</div> WALTER DURLING, Immigration Judge, 3400 Concord Rd, York, PA 17402; AND <br><br> ROGER PAULEY, Member, Board of Immigration Appeals ("BIA"), 5107 Leesburg Pike, Falls Church, Virginia 22041; <div align="right">AND</div> JOHN GUENDELSBERGER, Member, Board of Immigration Appeals ("BIA"), 5107 Leesburg Pike, Falls Church, Virginia 22041; <div align="right">AND</div> MARCOS GEMOETS, Member, Board of Immigration Appeals ("BIA"), 5107 Leesburg Pike, Falls Church, Virginia 22041; | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| AND | |
| BLAIR O'CONNOR,<br>Member, Board of Immigration<br>Appeals ("BIA"),<br>5107 Leesburg Pike,<br>Falls Church, Virginia 22041; | |
| AND | |
| JEFFREY BUBIER,<br>Assistant Chief Counsel,<br>U.S. Immigration and Customs<br>Enforcement, ("ICE")<br>3400 Concord Rd,<br>York, PA 17402; | |
| AND | |
| MAUREEN GAFFNEY,<br>Assistant Chief Counsel,<br>U.S. Immigration and Customs<br>Enforcement, ("ICE")<br>3400 Concord Rd,<br>York, PA 17402; | |
| AND | |
| MARY WITHROW,<br>Assistant Chief Counsel,<br>U.S. Immigration and Customs<br>Enforcement, ("ICE")<br>3400 Concord Rd,<br>York, PA 17402; | |
| AND | |
| VICTORIA BRAGA,<br>Trial Attorney, Civil Division<br>Office of Immigration Litigation<br>("OIL")<br>U.S. Department of Justice ("DOJ")<br>P.O. Box 878,<br>Ben Franklin Station, | |

| IN THE UNITED STATES DISTRICT COURT<br>FOR THE WESTERN DISTRICT OF TEXAS | |
|---|---|
| Washington, D.C. 20044;    **AND**<br><br>ICE DOES 1-10,<br>Officials and Agents,<br>Immigration and Customs<br>Enforcement;<br>    **Defendants** | |

## INTRODUCTION

1.    This civil rights action seeks injunctive relief and compensatory and punitive damages as a result of the United States government officers and agents' malicious removal process to deport Plaintiff Vamsidhar Vurimindi ("Plaintiff") and wrongfully detaining him for over 10 years, without any basis, despite ample evidence shows that Plaintiff is not removable.

2.    Plaintiff's illegal detention and United States government' several attempts to deport him are the direct and foreseeable consequence of official policies, patterns, practices, and customs that manifest not only intentional discrimination based on race and ethnicity and a failure to recognize basic principles of due process, but also a reckless disregard for human life and liberty. Although the United States government has long been aware that its failure to implement due process protections in its immigration detention and removal procedures results in unjust detention,

unfair hearings and illegal deportation orders, neither the U.S. Department of Justice ("DOJ") nor the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE") have rectified the short comings in their procedures and policies, leaving lawful permanent residents like Plaintiff vulnerable to erroneous apprehension, detention and deportation.

3.     The United States government lacks the authority to deport lawful permanent residents, who did not violate Immigration and Nationalities Act ("INA"). The Constitution vests certain rights in every individual live within United States national borders, among these the right to live in this country. It is the obligation of the government, both at the state and federal level, to protect the liberty and security of its lawful permanent residents. In this case, the United States government failed to protect Plaintiff, and individuals who lacked the proper training and oversight, violated Plaintiff's constitutional rights, causing Plaintiff profound physical and psychological injuries.

## JURISDICTION AND VENUE

4.     This civil rights action is brought pursuant to, inter alia, the First, Fourth, Fifth and Fourteenth Amendments to the United States

Constitution, *42 U.S.C. § 1983*, the Federal Tort Claims Act ("FTCA"), *28 U.S.C. §§ 2671*, et seq. and at law for relief from commission of tortious acts. This Court has jurisdiction over federal claims pursuant to the constitutional provisions enumerated and *28 U.S.C. § 1331* and *§ 1343 (3) and (4)*, as they are brought to redress deprivations of rights privileges and immunities secured by the United States Constitution and by law. Jurisdiction is also proper pursuant to the Declaratory Judgment Act, *28 U.S.C. §§ 2201(a)* and *2202*. This Court has jurisdiction over the supplemental state claims pursuant to *28 U.S.C. § 1367*.

5.     Pursuant to *28 U.S.C. § 1391(b) & (e)*, venue is proper in the Western District of Texas because substantial part of the acts and/or omissions giving rise to Plaintiff's claim occurred in this district and Plaintiff reside in Austin, TX. There is no real property involved in this action.

## PARTIES
### Plaintiff Vamsidhar Vurimindi

6.     Plaintiff Vamsidhar Vurimindi, is a native of India, a Lawful permanent resident of United States. Plaintiff was a lawful property owner of a condo unit # 607 in Hoopskirts Lofts Condominium located at 309-313 Arch Street, Philadelphia, PA 19106. Plaintiff is the only male person, born and brought up in India and belongs to Hindu religion, lived and owned condo

unit in Hoopskirts Lofts Condominium. Plaintiff was an entrepreneur, business owner, and statistical programmer for over seventeen years, and has enjoyed a good reputation both generally and in his occupation.

### The United States of America, ICE, EOIR, DHS and DOJ Defendants

7. Defendant United States of America is sued under the Federal Tort Claims Act for the wrongful and tortious acts of its employees and agencies. The United States is implicated by and through the actions, policies, patterns, practices, and customs of DOJ, DHS and/or ICE and its policy-makers, agents, and officers.

8. Defendant Merrick Garland is the Attorney General of the United States and the head of the DOJ. Mr. Garland shares responsibility for implementation and enforcement of the immigration laws along with Defendant Alejandro Mayorkas. Mr. Garland is sued in his official capacity

9. Defendant Alejandro Mayorkas is the Secretary of Homeland Security and is the head of the DHS and has ultimate responsibility for the administration and enforcement of the immigration laws. He is sued in his official capacity.

10. Defendant David Neal is Director of Executive Office for Immigration Review ("EOIR"), exercises authority over nationwide immigration courts

and Board of Immigration Appeals ("BIA") related to prompt adjudication of removal proceedings. He is sued in his official capacity.

11. Defendant Mary Cheng is Acting Director of EOIR, exercises authority over nationwide immigration courts and BIA related to prompt adjudication of removal proceedings. She is sued in her official capacity.

12. Defendant Daniel Weiss is Acting Chief Immigration Judge exercises authority over BIA prompt adjudication of removal proceedings. He is sued in his official capacity.

13. Defendant Sheila McNulty, Chief Immigration Judge exercises authority over BIA prompt adjudication of removal proceedings. She is sued in her official capacity.

14. Defendant David Wetmore, Chief Appellate Immigration Judge exercises authority over BIA prompt adjudication of removal proceedings. He is sued in his official capacity.

15. Defendant Patrick Lechleitner is the Director of ICE, the arm of DHS charged with detaining and removing aliens pursuant to federal immigration law. He is sued in his official capacity.

16. Defendant Russell Hott, is the Director of Office of Detention and Removal, which is the primary enforcement arm within ICE for the

identification, apprehension and removal of non-citizens unlawfully in the United States. He is sued in his supervisory and individual capacity.

17. Defendant Thomas Decker, at all relevant times mentioned herein was the Field Office Director for the Philadelphia Field Office of ICE, which is the Field Office responsible for the enforcement of the immigration laws within Commonwealth of Pennsylvania. He is sued in his supervisory and individual capacity.

18. Defendant Jennifer Ritchey, at all relevant times mentioned herein was the Acting Field Office Director for the Philadelphia Field Office of ICE, which is the Field Office responsible for the enforcement of the immigration laws within Commonwealth of Pennsylvania. She is sued in her supervisory and individual capacity.

19. Defendant Sean Ervin, at all relevant times mentioned herein was the Field Office Director for the Philadelphia Field Office of ICE, which is the Field Office responsible for the enforcement of the immigration laws within Commonwealth of Pennsylvania. He is sued in his supervisory and individual capacity.

20. Defendant John-Doe, at all relevant times mentioned herein was the Field Office Director for the Jackson Field Office of ICE, which is the Field

Office responsible for the enforcement of the immigration laws within Mississippi. He is sued in his supervisory and individual capacity.

21. Defendant Daniel Bible, at all relevant times mentioned herein was the Field Office Director for the Huston Field Office of ICE, which is the Field Office responsible for the enforcement of the immigration laws within Texas. He is sued in his supervisory and individual capacity.

22. Defendant Jose Correa, at all relevant times mentioned herein was the Field Office Director for the San Antonio Field Office of ICE, which is the Field Office responsible for the enforcement of the immigration laws within Texas. He is sued in his supervisory and individual capacity.

23. Defendant Agent#7627, at all relevant times mentioned herein was the Supervisory Detention and Deportation Officer with ICE. He is sued in his official and individual capacity.

24. Defendant Chris Hoffman, is or was at all times mentioned herein an Immigration Enforcement Agent with ICE. He is sued in his official and individual capacity.

25. Defendant Agent# 6230, J.RIED, is or was at all times mentioned herein an Immigration Enforcement Agent with ICE. He is sued in his official and individual capacity.

26.    Defendant Robert Wright, is or was at all times mentioned herein an Immigration Enforcement Agent with ICE. He is sued in his official and individual capacity.

27.    Defendant John Rife, is or was at all times mentioned herein an Immigration Enforcement Agent with ICE. He is sued in his official and individual capacity.

28.    Defendant Pinosa, is or was at all times mentioned herein an Immigration Enforcement Agent with ICE. He is sued in his official and individual capacity.

29.    Defendant Elova, is or was at all times mentioned herein an Immigration Enforcement Agent with ICE. She is sued in her official and individual capacity.

30.    Defendant Jo Ann McLane, is or was at all times mentioned herein is the Chief Counsel for OPLA – San Antonio and exercises authority over enforcement of INA through DHS and ICE-ERO operations within District of San Antonio. She is sued in her official and individual capacity.

31.    Defendant Kerry Doyle, is or was at all times mentioned herein is the Principal Legal Advisor, Office of the Principal Legal Advisor (OPLA), and exercises authority over enforcement of INA through DHS and ICE-ERO

operations across United States. She is sued in her supervisory and individual capacity.

32.   Defendant Walter Durling, is or was at all times mentioned herein was Judge in Immigration Court, York, PA and decided Plaintiff's case by without exercising independent judgment and abused discretion that is necessary or appropriate for termination of proceedings. He is sued in his official and individual capacity.

33.   Defendant Roger Pauley, is or was at all times mentioned herein is member of Board of Immigration Appeals, and presided over Plaintiff's appeal from Defendant Durling's removal order and failed to exercise independent judgment and abused discretion that is necessary or appropriate for termination of proceedings. He is sued in his official and individual capacity.

34.   Defendant John Guendelsberger, is or was at all times mentioned herein is member of BIA, and presided over Plaintiff's appeal from Defendant Durling's removal order and failed to exercise independent judgment and abused discretion that is necessary or appropriate for termination of proceedings. He is sued in his official and individual capacity.

35.   Defendant Marcos Gemoets, is or was at all times mentioned herein

is member of BIA, and presided over Plaintiff's appeal from Defendant Durling's removal order and failed to exercise independent judgment and abused discretion that is necessary or appropriate for termination of proceedings. He is sued in his official and individual capacity.

36.    Defendant Blair O'Connor, is or was at all times mentioned herein is member of BIA, and presided over Plaintiff's appeal from Defendant Durling's removal order and failed to exercise independent judgment and abused discretion that is necessary or appropriate for termination of proceedings. He is sued in his official and individual capacity.

37.    Defendant Jeffrey Bubier, is or was at all times mentioned herein is Assistant Chief Counsel with ICE, represented the U.S. government in removal proceedings. He is sued in his official and individual capacity.

38.    Defendant Maureen Gaffney, is or was at all times mentioned herein is Assistant Chief Counsel with ICE, represented the U.S. government in removal proceedings. She is sued in her official and individual capacity.

39.    Defendant Mary Withrow, is or was at all times mentioned herein is Assistant Chief Counsel with ICE, represented the U.S. government in removal proceedings and prepared briefs and other pleadings filed before the BIA. She is sued in her official and individual capacity.

40. Defendant Victoria Braga, is or was at all times mentioned herein is trial attorney with DOJ represented the U.S. government in U.S Court of Appeals for the Third Circuit. She is sued in her official and individual capacity.

41. In addition to the foregoing ICE agents and officials, unknown named ICE agents and officials are sued herein in their individual capacities and official capacities under fictitious names as "ICE Does 1-10" because their true names, titles, capacities, and/or degree of responsibility for the acts alleged herein are unknown to Plaintiff at this time. When Plaintiff ascertains this information, he will amend this Complaint accordingly. ICE Does 1-10 include, but are not limited to, ICE Officials and Supervisors, ICE Officers, and/or Immigration Enforcement Agents with ICE (collectively, the "ICE Doe Defendants"). Plaintiff is informed and believes, and thereon alleges, that the ICE Doe Defendants are legally liable to Plaintiff in some part for the wrongful acts and omissions of which Plaintiff complains herein.

42. All of the Defendants acted under the color of law, in bad faith, and contrary to established law and principles of constitutional and statutory law.

43. Plaintiff is informed and believes and thereon alleges that each of the

Defendants caused, and is liable for the unconstitutional and unlawful conduct and resulting injuries, by, among other things, personally participating in said conduct or acting jointly with others who did so; by authorizing, acquiescing or setting in motion policies, plans or actions that led to the unlawful conduct; by failing or refusing with deliberate indifference to maintain adequate supervision; and/or by ratifying the unlawful conduct taken by employees under their direction and control. Defendants' actions were taken pursuant to a policy, custom or usage of ICE and/or the Inter-governmental Services Agreement ("IGSA") between ICE and Pennsylvania Department of Corrections, and Pike County Correctional Facility; and agreements between ICE and Core Civic, Geo Group and BI Incorporated.

## LEGAL FRAMEWORK
### Determination of Finality of Non-Citizen's Conviction

44.   In Pennsylvania, a criminal defendant has ten days to time to file an optional post-sentence motion, from date of imposition of sentence. See *Pa. R. Crim. P. 720(A)*. Rule 720 is very clear. The trial judge must decide a timely filed post-sentence motion or grant a motion to extend that 120-day limit for 30 days within 120 days of the filing of the post-sentence motion. See *Pa. R. Crim. P. 720(B)(3)(a)*. If an extension is properly sought

and granted (the rule does not allow sua sponte extensions), the post-sentence motion must be decided before the end of the extended period but in no event more than 150 days from the date the motion was filed. Id. If the judge fails to decide the motion within the applicable time, the Rule provides, in mandatory terms, "the motion shall be deemed denied by operation of law". See *Pa. R. Crim. P. 720(B)(3)(a),(b)*. Once a post-sentence motion is deemed denied by operation of law under *Rule 720(B) (3)(a)* or *Rule 720(B)(3)(b)*, the Rule requires, again in mandatory terms, that "the clerk of courts shall forthwith enter an order on behalf of the court, and shall forthwith a copy of the order by mail or personal delivery to the attorney for the Commonwealth, the defendant(s), and defense counsel that the post-sentence motion is deemed denied". *Pa. R. Crim. P. 720(B)(3) (c)*. It is from that order that any appeal would be perfected by the aggrieved defendant. However, aggrieved defendant is hamstringed until an order is entered as no appeal may be initiated until a final order is entered. *Commonwealth v. Bentley*, 831 A.2d 668 (Pa. Super. 2003).[1]

45.    If no timely post-sentence motion is filed, the appeal notice is due

---

1.   Under *Pa. R.A.P. 301(d)*, a party can escape the legal limbo created by trial court by moving to reduce the order into judgment, by filing praecipe to take whatever action is necessary to prepare, sign and enter an order of judgment requested. See *Kyle v. Kyle*, 421 A.2d 403 (Pa. Super. 1980).

within 30 days of sentencing. See *Commonwealth v. Bilger*, 803 A.2d 199 (Pa. Super. 2002), appeal denied, 572 Pa. 695, 813 A.2d 835 (Pa. 2002) (when a post-sentence motion is filed an appellant has thirty (30) days from the denial of the post-sentence motion within which to file a notice of appeal. However, by the explicit terms of *Pa. R. Crim. P. 720(A)(2)*, the provision allowing thirty days from the denial of post-trial motions is contingent upon the timely filing of a post-trial motion. *Bilger*, 803 A.2d at 201).

46.     Under *Pa. R.A.P.* 903(a), "a notice of appeal shall be filed within 30 days after the entry of the order from which the appeal is taken." Id. Upon receipt of the notice of appeal, the clerk shall immediately stamp it with the date of receipt, and that date shall constitute the date when the appeal was taken, which date shall be shown on the docket". See *Pa. R.A.P. 905(a)(3)*. The clerk shall immediately transmit to the prothonotary of the appellate court named in the notice of appeal a copy of the notice of appeal and all attachments". See *Pa. R.A.P. 905(b)*. In Pennsylvania, the clerk of courts and prothonotary lack the authority to decline to accept a timely notice of appeal. *Commonwealth v. Williams*, 106 A.3d 583 (Pa. 2014)(citing *In re Administrative Order No. 1–MD–2003*, 594 Pa. 346, 936 A.2d 1, 9 (2007) and *Brown v. Levy*, 621 Pa. 1, 73 A.3d 514, 519 (2013)).

47.    Whether or not a conviction exists for immigration purposes is a question of federal law. *Matter of Roldan*, 22 I&N Dec. 512 (BIA 1999) (citing Matter of Ozkok, 19 I&N Dec. 546, n.6 (BIA 1988)). A conviction could not serve as the basis for removal until it had "attained a substantial degree of finality. Such finality did not occur unless and until direct appellate review of the conviction had been exhausted or waived". *Orabi v. Att'y Gen.*, 738 F.3d 535 (3d Cir.2014) (citing, Pino v. Landon, 349 U.S. 901 (1955))(holding that a conviction under *INA § 101(a)(48)(A)* does not support a charge of removability during the pendency of a direct appeal as of right). See also *Will v. INS*, 447 F.2d 529 (7th Cir.1971); *Aguilera-Enriquez v. INS*, 516 F.2d 565 (6th Cir.1975); *Marino v. INS*, 537 F.2d 686 (2d Cir.1976). For purposes of determining the date a conviction becomes final, federal courts look to state law. *Fahy v. Horn*, 240 F.3d 239 (3d Cir.2000) (As a matter of federal law we must look to state law governing the finality of conviction. Id. 240 F.3d at 244). In Pennsylvania a judgment is deemed final for purposes of PCRA immediately upon expiration of the time for seeking direct review. *Commonwealth v. Callahan*, 101 A.3d 118, 122 (Pa. Super. 2014). "Direct review" includes review as a right before the Pennsylvania Superior Court and the discretionary review of the Pennsylvania Supreme Court and the United States Supreme Court or

when the time for seeking such review expires. *Commonwealth v. Liebensperger*, 904 A.2d 40, 45 (Pa. Super. 2006); See also 42 Pa. C.S.A. § 9545(b)(3).

## U.S. Supreme Court Mandated Formal Categorical Approach to Impose Immigration Consequences for Criminal Conviction

48.   US Supreme Court has long held that imposition of immigration consequences upon a predicate conviction, "mandate a formal categorical approach." *Taylor v. United States*, 495 U.S. 575 (1990). This approach requires Immigration Judge "to look only to the fact of conviction and the statutory definition of the prior offense"-"not to the particular facts underlying that conviction." Id. at 600, 602. Under this categorical approach, Immigration Judge requires not only to ignore the actual manner in which a non-citizen was convicted of a certain crime(s) for purposes of the INA, but also to presume that the non-citizen did so by engaging in no more than the minimum conduct criminalized by the criminal statute under which non-citizen is convicted. See *Moncrieffe v. Holder*, 569 U.S. 184 (2013) (requiring courts to assume the conviction rested on the "minimum conduct criminalized by the state statute". *Moncrieffe*, 569 U.S. at 191). See *Mathis v. United States*, 136 S. Ct. 2243 (2016)(explaining that the categorical approach "treats such facts as irrelevant". *Mathis*, 136 S. Ct. at 2253). Moreover, "an elements-focus avoids unfairness to defendants."

*Mathis*, 136 S. Ct. at 2253. "Statements of 'non-elemental fact' in the records of prior convictions are prone to error precisely because their proof is unnecessary, which means "at trial, and still more at plea hearings, a defendant may have no incentive to contest" them. *Id.* These types of factual inaccuracies "should not come back to haunt the defendant many years down the road by triggering deportation or lengthy mandatory sentence." Id.

49.    To frame properly the issue here requires preliminary recognition of an important point, that US Supreme Court has long held that any predicate crime listed in INA refers to the "generic" version of the crime-"i.e., the offense as commonly understood." *Descamps v. United States*, 133 S. Ct. 2276 (2013). The Immigration Judge applying the categorical approach is limited to "comparing the elements of the statute forming the basis of the defendant's conviction with the elements of the generic crime." *Id.* The "prior conviction qualifies as an INA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.* In a typical case, then, an Immigration Judge performing a categorical-approach analysis "cannot go beyond identifying the crime of conviction" and reviewing the statutory definition. *Mathis*, 136 S. Ct. at 2252. But there is an exception. "In a narrow range of cases," the "categorical approach may

permit the sentencing court to go beyond the mere fact of conviction" and the statutory text, *Taylor*, 495 U.S. at 602, and also consult the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented," *Shepard v. United States*, 544 U.S. 13 (2005). This limited universe of court records, which has been extended to include jury instructions, see *Descamps*, 133 S. Ct. at 2281, has been termed "Shepard documents." The purpose of this "modified" approach, and its accompanying license to review any available Shepard documents, is to provide Immigration Judge with a tool to determine reliably not what specific conduct was the basis for a particular crime as a factual matter, but rather what type of conduct is generally represented by an underlying conviction as a legal matter. But because the modified approach is accordingly intended only to "serve the limited function" of "helping effectuate the categorical analysis," Id., it retains the categorical approach's single purpose: to figure out the precise elements of the crime of conviction. *Shepard*, 544 U.S. at 26.[2]

50.    In line with that limited function, the modified approach also has

2.  Ultimately, however, while the categorical approach and its modified variant involve many moving parts, they retain one overarching purpose: giving an Immigration Judge a way to "satisfy Taylor's demand for certainty" as to this underlying question: "What crime, with what elements," was the defendant convicted of? Id. at 2249, 2257 (citation omitted).

limited applicability: an Immigration Judge may use it only if the underlying conviction was under a so-called "divisible" statute. *Descamps*, 133 S. Ct. at 2281-82. A divisible statute "sets out one or more elements of the offense in the alternative," Id. at 2281, and in the "typical case brought under the statute, the prosecutor charges one of those alternatives, and the judge instructs the jury accordingly," Id. at 2284. See *Mathis*, 136 S. Ct. at 2249. The Immigration Judge accomplishes this by reviewing the Shepard documents, to "determine what crime, with what elements, the defendant was convicted of." *Id*. Stated differently, the question is whether the court can isolate the conviction to qualifying elements of "crime of stalking" alone, to the exclusion of lesser, non-qualifying conduct. The modified approach thus only has any possible application to "alternatively phrased statutes." Id. at 2256. So, when an Immigration Judge is faced with alternative wording in a statute, before going beyond the law's text and turning to Shepard documents to glean more information about the nature of a conviction, the Immigration Judge must first decide whether the statute is, in fact, divisible. That analysis, in turn, depends on whether the statute's components ("listed items," per Mathis) "are elements or means." Id. Elements are prerequisites to a conviction; means, by contrast, are not essential, but merely represent ways in which a statute might be violated. If

a statute's components merely describe different means, "the court has no call to decide which of the statutory alternatives was at issue in the earlier prosecution." Id. A conviction under such a statute thus cannot be analyzed using the modified approach and-assuming the statute criminalizes conduct outside INA's reach-the conviction may not be used to impose immigration consequences. Id. Only if a statute's components are elements may a court review any available Shepard documents to try to isolate which alternative element formed the basis for the conviction. Id.

51. In determining whether listed items are elements or means, the Supreme Court has authorized four possible approaches, the last of which is permissible only if the first three fail to yield an answer. See Id. at 2256-57. First, a "state court decision may definitively answer the question." Id. at 2256. In Mathis, for example, the Iowa Supreme Court had expressly held that the Iowa burglary statute at issue listed "alternative methods"-not elements-rendering the modified approach impermissible and disqualifying any conviction under the statute from ACCA consideration. Second, "the statute on its face may resolve the issue." Id. If, for example, the statute provides different penalties for violations of its different alternatives, it is considered to list elements; if instead it is "drafted to offer illustrative examples", it lists means. Id. Third, the "statute may itself identify which

things must be charged (and so are elements) and which need not be (and so are means)." Id. Finally,[3] if none of those provides a "clear answer," the court may conduct a limited review of the Shepard documents-which the Court has described as a "peek"-"for the sole and limited purpose of determining whether the listed items are elements of the offense." Id. at 2256-57.[4]

---

3. A determination of a statute's divisibility turns on the distinction between "means" and "elements." Elements are the constituent parts of a criminal offense that a jury must find beyond a reasonable doubt to convict; or, alternatively, that a defendant necessarily admits when pleading guilty. *Mathis*, 136 S. Ct. at 2248, 2256; see *Descamps*, 570 U.S. at 261-62. Means, on the other hand, are merely the factual ways that a criminal offense can be committed; they are "extraneous to the crime's legal requirements" and thus "need neither be found by a jury nor admitted by a defendant." *Mathis*, 136 S. Ct. at 2248 A divisible statute sets out one or more elements in the alternative, most often using disjunctive language to list multiple, alternative criminal offenses. *Descamps*, 570 U.S. at 262. Each alternative offense listed in a divisible statute must be proven beyond a reasonable doubt to sustain a conviction. An indivisible statute, by comparison, sets forth a single set of elements that define a single crime, regardless of whether the statute lists separate factual means of satisfying a particular element. *Mathis*, 136 S. Ct. at 2248-49. The modified categorical approach applies only to divisible statutes.

4. As to this fourth approach, the Court illustrated with an example: Suppose an indictment and correlative jury instructions charge a defendant with burgling a "building, structure or vehicle". That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. Id. at 2257. But if those documents, by contrast, "reference one alternative term to the exclusion of all others, the statute contains a list of

## FACTUAL ALLEGATIONS

## Background of Plaintiff's Non-Final & Non-Removable Conviction

52. Allison Borowski and Rajani Pattinson are Plaintiff's immediate neighbors in Hoopskirts Lofts Condominium. Plaintiff had disagreements with condominium developer Leonidas Addimando, which is complicated by Plaintiff's noise complaints against Allison Borowski. Beginning 2009, Plaintiff's relations with his neighbors and local merchants strained, and Plaintiff installed security-camera, to deter and capture his neighbors' criminal behavior.

53. On September 05, 2010, Allison Borowski filed private criminal complaint against Plaintiff for his innocuous communications with her and other neighbors and for installation of security-camera. On September 15, 2010, Philadelphia District Attorney indicted Plaintiff under Harassment (*18 Pa. C.S.A § 2709*) and Stalking (*18 Pa. C.S.A § 2709.1*) in *Commonwealth ex rel Borowski v. Vurimindi*, No: CR-10-09-15-9559, Philadelphia Municipal Court, ("Case-1").

54. On October 18, 2010, Plaintiff and Allison Borowski agreed for binding arbitration under *Phila. M.C.R. Crim. Rule.850(A)(2)*, and at the conclusion, Philadelphia Municipal Court arbitrator dismissed harassment

elements." Id.

29/103

and stalking charges and issued mutual stay-away order between Plaintiff and Allison Borowski; and permitted Plaintiff to continue installation of security camera.

55.    Allison Borowski along with other neighbors violated mutual stay-away order, by harassing Plaintiff to move-out of Hoopskirts Lofts Condominium. Therefore, on January 18, 2011, Plaintiff filed civil complaint *Vurimindi v. Borowski*, et al, No: 11012212, Philadelphia Common Pleas Court, against Allison Borowski, Rajani Pattinson and Leonidas Addimando et al, and as soon service of complaint effectuated on January 20, 2011, Allison Borowski and her co-defendants entered into unlawful agreement to file false police complaints, until police lock-up Plaintiff; spied, harassed, filed several false police complaints against Plaintiff.

56.    On April 11, 2011, Philadelphia Municipal Court commenced *Commonwealth v. Vurimindi*, No: MC-51-CR-9000095-2011, Philadelphia Municipal Court, ("Case-2") to determine whether Plaintiff violated mutual stay-away order in Case-1; and modified mutual stay-away order into, "no negative contact", because Allison Borowski filed police complaint accusing Plaintiff said "good morning".[5]

_____

5.  Philadelphia Municipal Court never decided whether Plaintiff violated mutual stay-away order in Case-1.

57.    In December 2011, Philadelphia District Attorney proposed a plea bargain stating, Commonwealth of Pennsylvania intended to withdraw Case-2, if Plaintiff withdraw civil compliant at *Vurimindi v. Borowski*, et al. Upon defense counsel suggestion, Plaintiff agreed with proposed plea bargain. Immediately within 10 minutes, Philadelphia District Attorney modified the bargain requiring Plaintiff to undergo a psychological evaluation. Therefore, Plaintiff declined and demanded speedy trial, and begin soliciting favorable witnesses.

58.    On January 15, 2012, Allison Borowski filed a complaint for violation of stay-away order for soliciting favorable witnesses. On January 30, 2012, Philadelphia Municipal Court dismissed this complaint and directed Plaintiff to submit for psychological evaluation and precluded him from soliciting favorable witnesses.

59.    On January 27, 2012, (prior to court order), Plaintiff served subpoenas upon Allison Borowski et al to produce documents related to Plaintiff. On February 04, 2012, Allison Borowski et al received subpoenas. Immediately, Allison Borowski filed another false police complaint accusing Plaintiff yelled "Fuck you". Immediately, Philadelphia Police arrested and charged Plaintiff for Disorderly Conduct in *Commonwealth v. Vurimindi*, No: MC-51-CR-0005022-2012, Philadelphia Municipal Court, ("Case-3").

60.    On February 10, 2012 Philadelphia District Attorney suppressed Condominium security-camera footage, establishing Allison Borowski's fabrication; and blackmailed Plaintiff to withdraw complaint in *Vurimindi v. Borowski et al*, else Allison Borowski would testify against him. Plaintiff refused to withdraw civil complaint, and demanded speedy trial. Immediately Philadelphia Municipal Court stated court appointed psychiatrist found Plaintiff is not competent to stand trial and involuntarily committed Plaintiff to administer psychiatric medications without *"Sells Hearing"* and without establishing violation of stay-away order or prima facie case in *Case-2* or *Case-3*.

61.    On March 14, 2012, Philadelphia Municipal Court released Plaintiff from involuntary commitment, requiring him to stay with his sister in Virginia Beach, VA and not return to Hoopskirts Loft Condominium. On April 11, 2012, Philadelphia Municipal Court permitted Plaintiff to return to Pennsylvania, and ordered to remain two blocks from Condominium. Immediately, Philadelphia District Attorney entered into agreement to withdraw Case-2 and Case-3, in-exchange for Plaintiff selling his real-estate properties and move-out of Condominium. Immediately, Plaintiff met his end of bargain by entering into distress sale agreements and submitted to the court.

62.   On May 06, 2012, Philadelphia District Attorney unilaterally rescind this agreement, stating Plaintiff filed his opposition to Allison Borowski's preliminary objections in *Vurimindi v. Borowski*, where withdrawing civil claim isn't part of agreement to withdraw Case-2 and Case-3.[6]

63.   On July 09, 2012, Philadelphia District Attorney commenced *Commonwealth v. Vurimindi*, No: CP-51-CR-00080-22-2012, Court of Common Pleas, Philadelphia, ("Case-4"), for two counts of stalking – one on Allison Borowski' allegations in Case-2 and Case-3 and second on Rajani Pattinson' allegations that formed or could have formed basis for Case-1.

64.   On August 17, 2012, Commonwealth of Pennsylvania filed information to charge Plaintiff under two counts of *18 Pa. C.S.A. § 2709.1(a)(1)* (Stalking),[7] and one count of *18 Pa. C.S.A. § 5503(a)(4)*

---

6. Plaintiff unable to rescind distress sale agreement for 657 N 11th Street, Philadelphia, PA 19123, because buyer sued Plaintiff for specific performance in *Green Lots v. Victor Land*, Case No: 120501630, Phila. Ct. Com. Pl (2012) and Judge Idee Fox transferred this property to buyer, and caused loss of $150,000 unrealized market-value for Plaintiff.

7. Engaged in course of conduct or repeatedly committed acts towards another person, including following person without proper authority, under the circumstances which demonstrated either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress such other person.

(Disorderly Conduct).[8]

65. Thereafter, Philadelphia District Attorney harassed Plaintiff by making him to undergo psychological evaluation for every 15 days to repeatedly declare him not competent to stand trial, despite Plaintiff was working as statistical programmer. Therefore on January 04, 2013, Plaintiff filed federal civil rights complaint *Vurimindi v. v. HSFLB Condo. Owners Ass'n*, No.13-39, (ED PA 2013), and served complaint upon Allison Borowski et al.

66. Immediately, Philadelphia District Attorney filed complaint for violation of stay-away order, for service of civil complaint upon Allison Borowski et al; and on March 14, 2013, Philadelphia Common Pleas Court conducted hearing to procure Plaintiff's testimony on service of complaint; and concluded Plaintiff didn't violate stay-away order; and then in June 2013, Philadelphia District Attorney filed complaint for violation of stay-away order, accusing Plaintiff contacted Allison Borowski via Linked In® and Twitter®. On August 13, 2013, Philadelphia Common Pleas Court conducted hearing to procure Plaintiff's testimony; and at hearing Plaintiff

---

8. With intent to cause public inconvenience, annoyance or alarm or recklessly creating a risk thereof. Created a hazardous or physically offensive condition by an act which served no legitimate purpose of the actors, and the intent of the actor was to cause a substantial harm or serious inconvenience or the actor persisted in disorderly conduct after reasonable warning or request to desist.

expressed his belief that Allison Borowski et al spoofed Twitter® and Linked In® accounts with Plaintiff's picture, because Plaintiff didn't have Twitter® account (until September 2018) and Allison Borowski conducted electronic eavesdropping across party-wall and conspired to file false police complaints. Philadelphia Common Pleas Court revoked Plaintiff's bail stating Plaintiff's mindset "reflect deep obsession and paranoia".

67.    On August 29, 2013, Philadelphia Common Pleas Court conducted hearing and issued de facto deportation order directing Plaintiff to return to India for mental health treatment from his family, and not return to United States, despite on August 28, 2013, court appointed psychiatrist found Plaintiff is competent to stand trial.

68.    On September 23, 2013, Plaintiff submitted fifty-one video clips establishing Allison Borowski and Rajani Pattinson's outright fabrications, but Philadelphia Common Pleas Court didn't docketed or preserved or reviewed in-camera evidence.[9]

69.    On October 03, 2013, Philadelphia Common Pleas Court revoked Plaintiff's bail for failing to self-deport to India, and denied to reinstate bail,

---

9.  See Petition for a Writ of Habeas Corpus at *Vurimindi v. Morgan et al*, Case No.:2:23-cv-00882-KNS (ED Pa 2023) for video evidence that established Allison Borowski, and Rajani Pattinson's outright fabrications.

despite on October 20, 2013, inmates assaulted Plaintiff and injured his spinal-cord for refusing to withdraw civil suit against Allison Borowski et al.[10]

70.    On February 07, 2014, after commencement of trial, without notice Commonwealth of Pennsylvania constructively amended two counts of stalking charges under *18 Pa. C.S.A. § 2709.1(a)(1) to include § 2709.1(a) (2)* in each of the two existing counts with either mentes reae requirement – "intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress".

71.    On February 07, 2014, Judge Diana Anhalt presided over trial as substitute for all white female jury, and openly identified with Allison Borowski, admitted inadmissible, harmful evidence, and eroded presumption of Plaintiff' innocence before his testimony in his defense, and precluded Plaintiff from completely testify in his defense, and found him guilty of four charges in two counts of stalking, for the conduct that Plaintiff was acquitted in Case-1; and for the conduct that Plaintiff should and could

---

10. Philadelphia Prison System administered 2400 to 3600 MG/Day Neurontin®, to alleviate nerve pain, which caused abnormal thinking, loss of coordination, memory, hearing & vision, hallucinations, dizziness, drowsiness, and weakness, and ultimately undermined Plaintiff's competency to waive his right to jury trial and stand trial.

have prosecuted in Case-1; and for Plaintiff's constitutionally protected conduct of religious prayers; conduct that is intimately associated with filing and prosecuting civil complaints, such pre-complaint investigation, serving complaints and subpoenas; and protesting illegal eavesdropping by displaying poster; and for the conduct that never occurred. At conclusion of the trial, judge found Plaintiff guilty without specifying under which mens rea requirement, by stating "I find you guilty hof four charges that the Commonwealth has charged against beyond reasonable doubt." Commonwealth Prosecutor Rouse stated, "No disorderly conduct, I agree to that". NT/2/7/14,pp.100.[11]

72.   On April 25, 2014, at sentence hearing, Judge Anhalt didn't allow Plaintiff to proceed as pro se, exercise allocution right, and introduce 220 hours of exculpatory video evidence establishing Allison Borowski, and Rajani Pattinson, et al outright fabrications that undermine guilty verdict and negate his culpability; and imposed forty(40) times higher than the standard range sentence of three(3) month(s) probation, as 2.5 to 5 year(s) incarceration, followed by 5 year(s) probation, without specifying reasons in

---

11. Defense Counsel Alfonso Gambone withheld video footage to facilitate Allison Borowski, and Rajani Pattinson, et al to make a case against Plaintiff through outright fabrications

open court for extreme departure from standard range sentence.[12]

73.   On April 25, 2014, Judge Anhalt didn't follow mandatory procedures under *Pa. R. Crim. P. 704(C)(3)&(4)* of advising Plaintiff's right to file a post-sentence motion and to appeal, and the time within which he must exercise those rights; and of the right to assistance of counsel in filing the motion and appeal and right to bail. In addition, Judge Anhalt didn't preserve sentence hearing transcripts; and didn't rule upon pro se motion to approve sentence hearing transcripts that were prepared from Plaintiff's memory under *Pa. R.A.P.1923*.

74.   On May 07, 2014 Judge Anhalt submitted Guideline Sentence Form to Pennsylvania Commission on Sentencing by listing Plaintiff's conviction is for violation of *18 Pa C.S.A § 2709.1(a)(1)* is with Offense Gravity Score ("OGS") of [3].[13] At best the OGS of [3] implies that Plaintiff is convicted for

---

12.   On February 10, 2014, despite Plaintiff sought protective custody (PC) in Philadelphia Prison System, inmates again assaulted and fractured Plaintiff's nose, jaw bone and knocked out his teeth. But, Philadelphia Prison System didn't investigate on whose behalf inmates are repeatedly assaulting Plaintiff and threatening him to withdraw civil suit against Allison Borowski et al.

13.   Pennsylvania Commission on Sentencing assigned OGS of [4] to the violation of *18 Pa. C.S.A. § 2709.1(a)(1)* with mens rea ["an intent to place such other person in reasonable fear of bodily injury"] and carved out a section [Offenses not otherwise listed and new offenses] and assign OGS of [3] for misdemeanor of first degree. See *204 Pa Code § 303.15*.

violation of *18 Pa C.S.A § 2709.1(a)(1)* with mens rea ["an intent to cause substantial emotional distress to such other person]; and at worst implies with mens rea ["either intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person].

## Plaintiff's Notice of Appeal to Superior Court of Pennsylvania

75.  On February 16, 2014, Plaintiff mailed pro se Notice of Appeal from Philadelphia Prison System,[14] which was stamped "Received Accepted for Review Only" on April 20, 2014, by the Clerk of the Court, (See Exhibit-1) and ultimately returned to Plaintiff. On April 26, 2014, Plaintiff mailed again self-same returned Notice of Appeal from Philadelphia Prison System by overwriting April 26, 2014 on February 16, 2014, which has stamped Received on May 16, 2014, by the Clerk of the Court, (See Exhibit-1), which has been docketed incorrectly in Case-3 instead of Case-4, where Case-2 and Case-3 merged together in Case-4 and transferred from Philadelphia Municipal Court to Common Pleas Court.

---

14. Under prison mailbox rule, Plaintiff's notice of appeal is considered filed with the clerk when he delivers the filing to prison mail authorities. See *Houston v. Lack*, 487 U.S. 266, 268 (1988). See *Pa. R.A.P. 905a(5)*("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.)(emphases added).

76.    On April 25, 2014, Plaintiff mailed anew pro se Notice of Appeal and Transcript Order Form from Philadelphia Prison System, which has stamped Received on May 01, 2014, by the court clerk. (See Exhibit-2), which has not been docketed by the Clerk of the Court.

### Plaintiff's Post-Sentence Motion

77.    On April 25, 2014, Plaintiff mailed pro se Motion to Reconsider Judgment from Philadelphia Prison System, which has stamped Received on May 01, 2014, by the Clerk of the Court, (See Exhibit-3), which has been docketed as "pro se correspondence".

## ICE Bad Faith Conduct in Contrary to Established Law and Principles of Constitutional and Statutory Law
### ICE Detainer Against Plaintiff's Release on Parole

78.    On September 23, 2015, under Defendants Decker and Agent#7627' supervision, Defendant Hoffman prepared I-213 (Record of Deportable/Inadmissible Alien) against Plaintiff by stating:

*Encounter*: On July 31, 2014, Vurimindi, Vamsidhar Reddy was encountered at SCI Camp Hill by Immigration Enforcement Agent Chris Hoffman. The subject admitted freely to being a citizen of India. The subject made no claim of being a citizen of the United States.
*Criminal History*: The subject has been convicted of the following criminal offenses: Stalking and Disorderly Conduct. The subject was arrested on February 4, 2012 by the Philadelphia Police Department for Stalking and Disorderly Conduct. The subject was then convicted on April 25, 2014

and sentenced to 2.5-5 years imprisonment.

*Derivative Issues*: The subject states that his mother and father are natives and citizens of India, therefore, he has no claim to derivative citizenship.

*Consular Notification*: The subject was not advised of his right to consular notification as he is not in ICE custody at this time.

*Gang Affiliation*: The subject claims no gang affiliation and his criminal and immigration history do not reflect any known gang affiliation.

*Military Service*: The subject has not served in the U.S. military.

*Fear Claim*: The subject stated he does not have a fear of persecution or torture if returned to India. The subject further states that he has had no prior threats against him or his family in India and does not have any concerns related to his political affiliation, ethnicity, race or sexual orientation.

*Health*: The subject claims and appears to be in good mental and physical health, subject claims no medical problems and is not currently taking any medications. The subject was ordered to be supervised under the Mental Health Unit while in the custody of the Pennsylvania Department of Corrections.

*Miscellaneous*: The subject claims to be married..... have no children.

*Disposition*: The subject is currently deportable under Section *237(a)(2)(E)(1)* of the Immigration and Nationality Act, as amended, in that you are an alien who at any time after entry has been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment and *Section 237(a)(2)(A)(iii)* of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in *Section 101(a) (43) (F)* of the Act, a crime of violence (as defined in section 16 of Title 18, United States Code, but not including a purely political offense) for which the term of imprisonment ordered is at least one year. The subject will be placed into removal proceedings pursuant to this Section. The subject will be processed and detained as a

Priority 1(e),[15] and 2(b),[16] case.

79.    ICE had a policy of lodging detainers against the release where the subject: – (1) falls within Priority 1(a), (c), (d), or (e), or Priority 2(a) and (b); as stated above, and – (2) has a final order of removal or there is otherwise sufficient probable cause that he or she is a removable alien, such as: Removal proceedings are already pending against the alien; A bio-metric confirmation of the subject's identity and a records check of federal databases that indicate the subject lacks immigration status; and/or Statements made voluntarily by the individual to an immigration officer and/or other reliable evidence that indicates the subject lacks immigration status.

80.    Defendants Decker and Agent#7627 knew that Defendant Hoffman never interviewed Plaintiff at SCI-Camp Hill. In addition, Defendants Decker and Agent#7627 also knew that no other ICE agent interviewed Plaintiff,

15.  Priority 1(e), classified as an "aggravated felony" as defined in *section 101(a)(43)* of the Immigration and Nationality Act.

16.  Priority 2(b), classified as a "significant misdemeanor", such as domestic violence; sexual abuse; burglary; unlawful possession or use of a firearm; drug distribution or trafficking; or driving under the influence; or another conviction resulting in a sentence of 90 days or more time to be served in custody, not included suspended sentences; or When, in the judgment of an ICE Field Office Director, the alien otherwise poses a danger to national security.

while he has been incarcerated in Pennsylvania Department of Corrections.

81.    Defendants Decker, and Agent#7627 knew that Defendant Hoffman' statement that on July 31, 2014, Plaintiff told him that he had no fear of persecution or torture if returned to India, is fabricated.[17]

82.    Defendants Decker, Agent#7627 and Hoffman knew that as of July 31, 2014, Case-4 docket shows that, there are several pro se post-verdict motions are pending; and timely pro se post-sentence motion docketed as "pro se correspondence".

83.    Defendants Decker, Agent#7627 and Hoffman knew that as of September 23, 2015, Judge Anhalt failed to dispose pro se post-verdict / post-sentence motions and Clerk failed to enter adverse orders after 120 days by the operation law.

84.    Defendants Decker, Agent#7627 and Hoffman knew that as of September 23, 2015, Case-4 docket, shows that Plaintiff filed several praecipies asking Clerk to enter adverse orders against post-verdict / post-sentence motions by operation of law, such that he can escape the legal limbo.

_____

17. The remaining information in I-213 is Defendant Hoffman's monologue compiled from Plaintiff's U.S. Citizenship and Immigration Services ("USCIS") records; and I-94 (DHS Arrival/Departure Record); and Philadelphia Court of Common Pleas Docket in Case-4.

85. Defendants Decker, Agent#7627 and Hoffman knew that as of July 31, 2014 and September 23, 2015, Plaintiff filed several writs of mandamus in Superior Court and Supreme Court of Pennsylvania seeking an order directing Clerk to enter adverse order against post-verdict / post-sentence motions or docket timely filed notice of appeal – which are cross referenced in the first page of Case-4 docket.

86. Defendants Decker, Agent#7627 and Hoffman knew that as of July 31, 2014 and September 23, 2015, Plaintiff's conviction under *18 Pa. C.S.A. § 2709.1(a)(1)* (Stalking), and *18 Pa. C.S.A. § 5503(a)(4)* (Disorderly Conduct) isn't final.

87. Defendants Decker, Agent#7627 and Hoffman knew (or should have known) that *8 U.S.C. § 1101(a)(43)(F)* cross refer *18 U.S.C. § 16* which define "crime of violence" means— (a)an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b)any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense. Id.

88. Defendants Decker, Agent#7627 and Hoffman knew (or should have

known) that Pennsylvania's stalking statute, *18 Pa. C.S.A. § 2709.1(a)* states that: A person commits the crime of stalking when the person either: (1) engages in a course of conduct,[18] or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury,[19] or to cause substantial emotional distress,[20] to such other person; or (2) engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person.

89.    Defendants Decker, Agent#7627 and Hoffman knew (or should have known) that on the face of *18 Pa. C.S.A. § 2709.1(a)*, it is clear that this

---

18.    *18 Pa. C.S.A. § 2709.1(f)* define "Course of conduct" as "A pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct. The term includes lewd, lascivious, threatening or obscene words, language, drawings, caricatures or actions, either in person or anonymously".

19.    *18 Pa. C.S.A. § 2301* define the term "Bodily injury" as Impairment of physical condition or substantial pain.

20.    *18 Pa. C.S.A. § 2709.1(f)* define "Emotional distress" as "A temporary or permanent state of mental anguish".

statute has no element of use, attempted use, or threatened use of physical force against the person or property of another. Therefore a conviction under *18 Pa. C.S.A. § 2709.1(a)* is not a "crime of violence" under *8 U.S.C. § 16(a)*.

90.    Defendants Decker, Agent#7627 and Hoffman knew (or should have known) that, on June 26, 2015, U.S. Supreme Court held that the Armed Career Criminal Act's ("ACCA") so-called "residual clause" definition of a "violent felony" is unconstitutionally vague. See *Johnson v. United States*, 576 U.S. 591 (2015). The ACCA residual clause is identical with *18 U.S.C. § 16(b)*, which has been cross referenced in *8 U.S.C. § 1101(a)(43)(F)*'s definition of a "crime of violence".[21] Therefore *18 U.S.C. § 16(b)* is unconstitutionally vague; and a conviction under *18 Pa. C.S.A. § 2709.1(a)* is not a "crime of violence" under 8 U.S.C. § 16(b).

91.    Defendants Decker, Agent#7627 and Hoffman knew (or should have known) that, In *Matter of Sanchez-Lopez,* 26 I. & N. Dec. 71 (BIA 2012), BIA set forth the elements of stalking which are necessary for the crime to come within *INA § 237(a)(2)(E)(i):* (1) conduct that was engaged in on more

---

21.  On October 19, 2015, in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015); and on August 5, 2016, in *United States v. Gonzalez-Longoria*, 815 F.3d 189 (5th Cir. 2016), Ninth Circuit and Fifth Circuit Courts held that § 16(b) "residual clause" is unconstitutionally vague.

than a single occasion; (2) conduct which was directed at a specific individual; and (3) conduct which intended to cause the victim to be placed in fear of bodily injury or death. *Id.* at 74.

92.    Defendants Decker, Agent#7627 and Hoffman knew (or should have known) that, a simple comparison of *mentes reae* element of "crime of stalking" outlined in *Matter of Sanchez-Lopez*, Supra with mentes *reae* element of *18 Pa. C.S.A. § 2709.1*, it is plainly evident that mentes *reae* element intent to be placed in fear of bodily injury or death *of* "crime of stalking" outlined in *Matter of Sanchez-Lopez*, Supra, only partially overlaps with first means of *mentes reae* element of *§ 2709.1(a)(1)-(2)* – intent to place such other person in reasonable fear of bodily injury, and left-out the "course of conduct" that committed with second means of *mentes reae* element of *§ 2709.1(a)(1)-(2)* – intent to cause substantial emotional distress.

93.    Defendants Decker, Agent#7627 and Hoffman knew (or should have known) that, under *Mathis's* legal frame work to impose immigration consequences as outlined above, it is real in Pennsylvania that *18 Pa. C.S.A. § 2709.1(a)(1)* and *18 Pa. C.S.A. § 2709.1(a)(2)* will be applied to the conduct falling outside the definition of a "crime of stalking" outlined in

47/103

*Matter of Sanchez-Lopez*, 26 I&N Dec. 71 (BIA 2012),[22] and intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress is indivisible relative to the definition of a "crime of stalking" in *INA § 237(a)(2)(E)(i)*.

94.    On September 23, 2015, Defendants Decker, Agent#7627 and Hoffman knew (or should have known) that Plaintiff's non-final conviction under *18 Pa. C.S.A. § 2709.1(a)(1)* is neither "crime of stalking" nor "crime of violence".

95.    On September 23, 2015, Defendants Decker, Agent#7627 and Hoffman, in bad faith, and contrary to established law and principles of constitutional and statutory law, decided to use non-final conviction to impose immigration consequences upon Plaintiff, by preparing I-213, and lodged a detainer against Plaintiff's release on parole.

96.    Defendants Decker, Agent#7627 and Hoffman' bad faith manifest from their classification of Plaintiff's non-final conviction as an "aggravated felony", to make Plaintiff's deportation is almost certain under special "expedited removal" procedures and make Plaintiff permanently

---

22. *Commonwealth v. Schierscher*, 668 A.2d 164 (Pa. Super.1995) (applying former subsection *2709(b)(2)* with intent to cause substantial emotional distress to the person).

inadmissible into United States; and to limit the power of the federal courts to oversee and correct their bad faith actions.

## ICE Unlawful Notice to Appear

97.    On January 01, 2016, Defendants Decker, Agent#7627, and Agent# 6230, J.Ried knew (or should have known) that Plaintiff's conviction under *18 Pa. C.S.A. § 2709.1(a)(1)* is not final, is not "aggravated felony" ("crime of violence") and is not "crime of stalking".

98.    On January 01, 2016, Defendant Decker directed Defendants Agent#7627, and Agent# 6230, J.Ried to issue Notice to Appear ("NTA") by charging Plaintiff is removable under: (1) *INA § 237(a)(2)(E)(i)*, as an alien who has been convicted of a crime of domestic violence, a crime of stalking, or a crime of child abuse, child neglect, or child abandonment; (2) *INA § 237(a)(2)(A)(iii)* as any alien who is convicted of an aggravated felony as defined in *INA § 101(a)(43)(F)*, a crime of violence as defined in *8 U.S.C. § 16*.

## ICE Refusal to Lift Detainer to Worn Out and Compel Plaintiff to Voluntarily Accept Illegal Deportation.

99.    On June 27, 2017, in Case-4, after 3.5 years from filing post-sentence motion, Judge Anhalt entered an adverse order denying by operation of law against post-sentence motion and released Plaintiff from

legal limbo to take-up direct appeal from April 25, 2014 imposition of sentence.

100. On October 10, 2017, BIA reopened and administratively closed removal proceedings pending resolution of Plaintiff's direct appeal from April 25, 2014 sentence in Case-4. Immediately Plaintiff requested ICE to lift detainer against his release on parole, because prior removal order is predicated upon non final conviction and entered without jurisdiction.

101. Defendant Decker, Hoffman, Agent#7627, and Agent# 6230, J.Ried knew (or should have known) that Plaintiff's conviction isn't final until U.S. Supreme Court denies a writ of certiorari, to impose immigration consequences upon April 25, 2014 conviction. But, they refused to lift the detainer against Plaintiff's release on parole, despite removal proceedings are administratively closed.[23]

102. Defendant Decker, Hoffman, Agent#7627, and Agent# 6230, J.Ried issued detainer against Plaintiff's release on parole after completing

---

23. On November 2, 2017, Plaintiff filed mandamus action against DHS, ICE and U.S. Attorney General seeking an order compelling DHS to lift the immigration detainer issued against him. See *Vurimindi v. Sec'y, Dep't of Homeland Sec.*, 2:17-cv-1425 (W.D. Pa. Aug. 7, 2018). In addition, on November 13, 2017, Plaintiff filed Writ of Mandamus, (Case No:17-3483) in U.S. Court of Appeals for Third Circuit seeking to have the immigration detainer against him lifted. U.S. Court of Appeals transferred matter to Western District of Pennsylvania to consolidate with Case No:2:17-1425, and ultimately dismissed for lack of subject matter jurisdiction.

minimum sentence of 2.5 years, in bad faith, to drag him into oppressive removal proceeding and worn-him-out — to make him to voluntarily concede his removability as desired by Allison Borowski and Rajani Pattinson; and therefore refused to lift the detainer to make Plaintiff serve maximum 5 years sentence in Pennsylvania Dept of Corrections until August 31, 2018; and then lifted detainer.

## ICE Unlawful Detention

103. On December 14, 2018, a three-Caucasian female Superior Court judge panel erroneously dismissed Plaintiff' meritorious direct appeal from February 07, 2014 wrongful guilty verdict and April 25, 2014 illegal sentence in Case-4.

104. On December 18, 2018, Defendant Withrow filed Motion to Recalendar and Reinstate Removal Order, despite knowing that in Pennsylvania a conviction is not final until U.S. Supreme Court denies a writ of certiorari or time to file this discretionary appeal is expired; and Plaintiff didn't wave his right to file discretionary appeal; and prior removal order was entered when Plaintiff's conviction is not final; and conviction under *18 Pa. C.S.A. § 2709.1(a)(1)* isn't a "crime of stalking" under *INA § 237(a)(2)(E)(i)* or "crime of violence".

105. On December 18, 2018, Defendants Wright and Rife, without warrant raided into Plaintiff's home in Philadelphia, PA, arrested and removed him from home, without permitting him to pack his pleadings, clothes, medicines, laptop and eye glasses. After, removing Plaintiff from his home, one of the two ICE agents reentered Plaintiff' home to collect laptop, mobile telephone, and solid gold framed eye-glasses; and then transported Plaintiff him to 114 North 8th Street, Philadelphia, PA 19107; and recorded laptop, and mobile telephone as Plaintiff's property, and didn't recorded solid gold framed eyeglasses weight over 1.5 Ounces as seized property or gave them to Plaintiff to wear within detention center. On the same day, Defendants Wright and Rife transported Plaintiff to Pike County Correctional Facility, and deprived Plaintiff right to access his pleadings in which he is a party to prevent him from filing discretionary appeals in Pennsylvania and U.S. Supreme Courts.

106. Immediately, Plaintiff request ICE for his solid gold framed eyeglasses, because he cannot see; and requested to release him from illegal detention.

107. On January 02, 2019, Plaintiff filed Petition for a Writ of Habeas Corpus seeking his release from illegal detention, because his removal proceedings are administratively closed and time to file discretionary

appeals to challenge April 25, 2014 conviction is not waived or expired. Defendants Decker, Ritchey, Ervin and ICE Does 1-10 defended their illegal detention. See *Vurimindi v. Lowe*, Case No.: 3:19-cv-00007-MEM-DB, in USDC for MDPA.[24]

108.    On July 02, 2019, Defendants Decker, Ritchey, Ervin and ICE Does 1-10 denied Plaintiff's request for release from illegal detention stating that Plaintiff is danger to the community and flight risk, and decided to continue detention pending decision on Petition for Review (Case No: 19-1848) in U.S. Court of Appeals for Third Circuit, despite the court issued stay of removal, stating ICE expected to obtain a travel document to expeditiously remove Plaintiff from United States as soon court lift the stay. In case court hasn't lift the stay, after one year ICE will schedule anew Post-Order

---

24.    On February 13, 2020 District Court denied Writ of Habeas Corpus stating 400 days illegal detention is not arbitrary or unreasonable, by breaking the duration of illegal detention into pre-final and post-final removal order—from December 18, 2018 through April 8, 2019 = 80 days as pre-final order under §1226(c); from April 9, 2019 until June 20, 2019 = 72 days as post final order under §1231; and from June 21, 2019 through January 23, 2020 = 216 days as pre-final order under §1226(c). On April 06, 2020, Plaintiff filed anew Petition for a Writ of Habeas Corpus seeking his release from illegal detention, and on December 8, 2020, District Court transferred case to USDC for SDTX as case 4:20-cv-04182. See *Vurimindi v. Lowe*, Case No.: 3:20-cv-00561-MEM-DB in USDC for MDPA.

Custody Review and then determine whether to release or continue detention.

109. Immediately, Plaintiff contested Defendants Decker, Ritchey, Ervin and ICE Does 1-10's determination of his dangerousness and flight risk, because he is a statistical programmer & statistician; and business and property owner in Philadelphia, earned MBA from Duke University, and after release he would concentrate on working as statistical programmer & statistician to support his family, and will abide by any and all conditions placed on his release. In addition, Plaintiff reminded ICE that he had cooperated with them to obtain travel document; and also reminded ICE Defendants that their belief court would lift stay against removal is unrealistic, because the facts and law states Plaintiff is not removable.

110. On August 6, 2019, Plaintiff notified ICE's Headquarters Post-Detention Unit ("HQPDU") that it is unlikely that he will be removed from United States in the reasonably foreseeable future, because the removable order is erroneous and he is not convicted for "crime of stalking" under *INA § 237(a)(2)(E)(i)*. However, HQPDU decided to continue Plaintiff's custody.

111. On September 18, 2019, without notice, Defendants Decker, Ritchey, Ervin and ICE Does 1-10 moved Plaintiff from Pike County Correctional Facility to York County Prison, York, PA-17402, and did not provide access

to law library. Thereafter, on October 02, 2019, without notice, ICE moved Plaintiff from York County Prison to Adams County Detention Center, Natchez, Mississippi-39190 to remove from United States.[25]

112. Defendant John-Doe and ICE Does 1-10, three times transported Plaintiff from Adams County Detention Center to GEO Group', "72-hour staging facility" near the local airport in Alexandria, Louisiana, to board Plaintiff on a large-frame charter removal flight to India, stating Plaintiff did not establish legal basis to remain in the United States, despite stay on removal is in force.[26]

---

25. Adams County Detention Center law library do not subscribe to Pennsylvania case-law; and law library have only one computer for over three hundred immigration detainees, where all detainees are desperately trying to file pleadings for reliefs in various courts and can not complete their pleadings. Plaintiff filed grievances with ICE, York County Prison, and Adams County Detention Center for lack of access to law library and Pennsylvania case-law. Adams County Detention Center told that ICE did not required them to provide Pennsylvania case-law.

26. On October 18, 2019, Plaintiff filed Petition for a Writ of Habeas Corpus seeking release from detention. Defendants John-Doe and ICE Does 1-10 defended illegal detention; and on March, 23, 2021, court denied the writ stating twenty-four (24) months detention is not unreasonable. See *Vurimindi v. Gillis et al*, Case No.: 5:19-cv-00106-DCB-MTP in USDC for SDMS.

113. On March 12, 2020, Defendants John-Doe and ICE Does 1-10 moved Plaintiff from Adams County Detention Center to Montgomery Processing Center in Texas.

114. Defendants Daniel Bible and ICE Does 1-10 refused to release Plaintiff from illegal detention, despite Plaintiff contracted COVID virus and suffered (and still suffering from long COVID). Therefore, on September 22, 2020, Plaintiff filed Petition for a Writ of Habeas Corpus seeking release from detention, and Defendants Daniel Bible and ICE Does 1-10 defended illegal detention; and ultimately on March 11, 2021, court dismissed the writ as moot. See Vurimindi v. Tate et al, Case No: 4:20-cv-03357 in USDC for SDTX.

115. On January 15, 2021, after oppressive twenty-six (26) months detention, Defendants Daniel Bible and ICE Does 1-10 released Plaintiff under ICE Intensive Supervision Appearance Program (ISAP) and the Electronic Monitoring Device (EMD) Program in the State of Texas administered by BI Incorporated, and attached ankle monitor and dropped him at Houston, TX bus station with detention center clothes, because ICE destroyed Plaintiff's street clothes that he was wearing on December 18, 2018, when they removed him from his home.

116. On January 15, 2021, Defendants Daniel Bible and ICE Does 1-10

56/103

directed him to report at ICE Philadelphia Field Office, and didn't allow him to apply for employment authorization. Plaintiff unable to secure private housing in Philadelphia, PA, because Family Court awarded 100% of his home to his ex-wife. Therefore, Plaintiff sought shelter at Casa Marianella, an emergency shelter for displaced immigrants in Austin, TX and requested Defendants Decker, Ritchey, Ervin and ICE Does 1-10 to permit him to report at ICE San Antonio Field Office.

117. In April 2021, Plaintiff requested Defendants Jose Correa, Officer Penosa and ICE Does 1-10 to remove ankle monitor and enroll him into less embarrassing monitoring program via BI SmartLINK® mobile application. Initially Defendants Jose Correa, Officer Penosa and ICE Does 1-10 refused to remove ankle monitor and after two months enrolled him into monitoring program via BI SmartLINK® mobile application and made him to report on weekly basis.

118. In July 2021, Defendants Jose Correa, Officer Penosa, Decker, Ritchey, Ervin and ICE Does 1-10, changed release condition to apply for employment authorization. In November 2021, USCIS issued employment authorization which expired in November 2022.

119. On August 24, 2022, the United States Court of Appeals for Third

Circuit vacated Defendant Pauley's July 07, 2017 and Defendant Guendelsberger's April 09, 2019, orders affirming Defendant Durling's February 7, 2017, removal order stating conviction under Pennsylvania Stalking Statute, 18 Pa. C.S.A. § 2709.1(a)(1) is not "crime of stalking" under *8 U.S.C. § 1227(a)(2)(E)(i)* as defined by BIA.

120. Immediately, Plaintiff notified Defendants Jose Correa, Officer Penosa, Officer Elova and ICE Does 1-10 about United States Court of Appeals' August 24, 2022 order vacating Defendant Pauley's July 07, 2017 and Defendant Guendelsberger's April 09, 2019, orders affirming Defendant Durling's February 7, 2017, removal order, and demanded to terminate ISAP reporting requirements. Defendants Jose Correa, Officer Penosa, Officer Elova and ICE Does 1-10 refused to terminate ISAP reporting and continued to harass Plaintiff to report at ICE San Antonio Field Office.

121. On March 08, 2023, Plaintiff reported to Defendants Jose Correa, Officer Penosa, Officer Elova and ICE Does 1-10 at ICE San Antonio Field Office and re-requested to terminate reporting requirements;  but they refused to terminate and ordered him to reappear on September 6, 2023, at 10:00 AM.

122. On April 20, 2023, BIA terminated removal proceedings against Plaintiff. Immediately, Plaintiff notified to Defendants Jose Correa, Officer Penosa, Officer Elova and ICE Does 1-10 that they have no right to continue to harass him and directing him to report to Defendants Jose Correa, Officer Penosa, Officer Elova and ICE Does 1-10 under ISAP. On May 18, 2023, I Defendants Jose Correa, Officer Penosa, Officer Elova and ICE Does 1-10, terminated ISAP reporting requirements.

### ICE and EOIR Defendants Bad Faith

123. On April 06, 2016, Plaintiff appeared before Defendant Durling, complained that he didn't received NTA and he don't know exact charges against him; and asserted that his conviction neither final nor deportable. On April 06, 2016, Defendant Bubier countered in bad faith stating that Plaintiff's conviction is final, when in fact it was not.

124. On April 30, 2016, after receipt of NTA, Plaintiff filed Application to Dismiss Charges, because April 25, 2014 conviction isn't final, and attached copies of pending post-verdict and post-sentence motions in Case-4 docket. In addition, Plaintiff notified Defendant Durling that SCI-Pine Grove law-library don't subscribe immigration case-law, he cannot retain private counsel and pro bono counsels aren't responding to requests

for legal representation.

125. On May 11, 2016, Plaintiff re-appeared before Defendant Durling, and notified that SCI-Pine Grove law-library don't subscribe immigration case-law, he cannot retain private counsel and pro bono counsels' didn't responded to his letters. In response, Defendant Walter Durling said, "Nor will they. You won't get a response from them, or if you do, you'll get a rejection. I'm obligated to give you the list, but since you're serving prison term none of the organizations on the list is willing to represent prisoners, so if that's the way you're going to try to get an attorney, forget it. It's not going to happen. Like I said, I'm obligated to give you the list, but it's basically worthless for you".

126. On May 11, 2016, Defendant Durling refused to continue removal proceedings in bad faith, until Plaintiff paroled to immigration detainer, such that organizations on the pro bono list potentially represent Plaintiff. In addition Defendant Durling ignored evidence of pending post-sentence motion on Case-4 docket, and wantonly ruled that, April 25, 2014 conviction is final.

127. On June 10, 2016, Plaintiff filed Application(s) to Dismiss Charges, because his conviction isn't final, and his conviction isn't "crime of stalking"

and isn't a "crime of violence" or "crime involving moral turpitude" and didn't occurred in domestic setting.

128. On June 22, 2016 (and on July 13, 2016), Defendant Gaffney countered that Plaintiff's conviction is final, when in fact it was not; and argued Plaintiff's conviction is "crime of violence" and "crime of stalking", and thereby Plaintiff removable, when in fact Plaintiff's conviction isn't "crime of violence" or "crime of stalking".

129. On July 13, 2016, Defendant Durling held that Plaintiff's conviction is "crime of stalking" (when it isn't) and dismissed "crime of violence" charge and ignored to rule on uncharged removability under "crime involving moral turpitude", and leave it open for ICE to commence new removal proceedings at later date, under anew section of INA ("crime involving moral turpitude") to worn out Plaintiff through one removal proceeding after another until United Sates government got the result it wanted.

130. Immediately, Plaintiff filed Application for Cancellation of Removal and Asylum. In addition, Plaintiff filed Application to Compel IRS to provide copies of his Tax Returns, but Defendant Durling refused to use Immigration Court's subpoena power, stating, "I'm sure you have lot of paper work, Mr. Vurimindi but if you have not been able to access it for a

very long time and the individuals who have, potentially who have, or I should say ostensibly who have access to your documents or individuals you have sued before, they probably are not too interested in your best interest, so I can't do anything about it".

131. On November 14, 2016, Plaintiff re-appeared before Defendant Durling, and surprisingly Ann Boris (Plaintiff's estranged wife (now ex-wife) send her brother John Boris, Esq to oppose Plaintiff's Application for Cancellation of Removal. Plaintiff told Defendant Durling that he didn't call Mr. Boris as witness, and objected to his testimony. Immediately Defendant Mary Ellen Withrow said, "Your Honor, the Government would like to call him as a witness.....I would like to call him as a witness at a later date"; and Defendant Durling allowed ICE to use Mr. Boris as witness against Plaintiff at next hearing.

132. On December 28, 2016, Defendant Withrow filed late Notice of Intent to Offer Evidence, and offered Allison Borowski, Rajani Pattinson and John Boris to rebut Plaintiff's November 14, 2016 testimony regarding nature of his conviction. In addition, Defendant Withrow submitted an affidavit from Ann Boris, which was signed on December 14, 2016 (two days prior to family court entered divorce decree on December 16, 2016); and Notes of Trail Testimony in Case-4 and Allison Borowski, Rajani Pattinson's Jan-

March 2011 police complaints against Plaintiff. Immediately, Plaintiff filed Motion to Continue Merits Hearing, because he require legal representation and time to secure 220 hours of exculpatory video evidence to establish Allison Borowski, Rajani Pattinson's outright fabrications.

133. On January 09, 2017, Defendant Durling denied to continue hearing, and on January 11, 2017, over Plaintiff's objections, he permitted Allison Borowski, and Rajani Pattinson to testify falsely and freeze video to preclude Plaintiff from visually gauge Allison Borowski, and Rajani Pattinson's non-verbal gestures and body language and didn't allow Plaintiff to conduct thorough cross-examination, where Plaintiff didn't have the benefit of 220 hours of video evidence through which he can easily establish Allison Borowski, and Rajani Pattinson's outright fabrications. After, Plaintiff submitted available documentary evidence establishing Allison Borowski, and Rajani Pattinson's conspiracy to file false police complaints, in retaliation for filing civil complaint, *Vurimindi v. Borowski et al.* On January 18, 2017, Defendant Durling issued decision to deny cancellation of removal.[27]

_____

27. Defendant Durling in supporting his decision to allow ICE to ambush Plaintiff at January 11, 2017 hearing stated, "Importantly, at his November 14, 2016 merits hearing government counsel indicated that she was exploring the possibility of presenting rebuttal witnesses to counter respondent's claim that his neighbors filed false police complaints against

134. On February 07, 2017, Defendant Withrow filed Motion to Pretermit Application for Asylum and Withholding of Removal, claiming that Plaintiff's conviction is "particularly serious crime".

135. On February 07, 2017, Plaintiff appeared before Defendant Durling, and offered DVD containing video evidence establishing Allison Borowski, and Rajani Pattinson's outright fabrications. But, Defendant Durling refused to review video evidence, stating, "I don't have apparatus or the infrastructure to review such media, and granted ICE Motion to Pretermit; and refused to seal Plaintiff's testimony about his fear of persecution and prevented Plaintiff from testifying completely, to deny deferral of removal.

136. Defendants Durling, Bubier, Gaffney, and Withrow, in bad faith and contrary to established law and principles of constitutional and statutory law, persecuted and tormented Plaintiff using non-final conviction.

### ICE, BIA and EOIR Defendants Bad Faith

137. Plaintiff immediately filed Notice of Appeal to BIA from Defendant Durling's February 07, 2017 final removal order and complained several

---

him in retaliation for his civil suits", where on November 14, 2016, Defendant Withrow only indicated that she would like to call Mr. Boris as witness; and at no time she indicated that she intended to call Allison Borowski, and Rajani Pattinson to rebut Plaintiff's testimony about their retaliation for filing civil complaint.

errors on appeal including conviction under *18 Pa. C.S.A. § 2709.1(a)(1)* isn't "crime of stalking" under *INA § 237(a)(2)(E)(i)*, and conviction isn't final, due process right to counsel, and right against self-incrimination is violated; *INA § 237(a)(2)(E)(i)* and *INA § 1231(3)(B)(ii)* are unconstitutionally vague and ambiguous; and elements of *18 Pa. C.S.A. § 2709.1(a)(1)* aren't categorically "particularly serious crime" and redetermination of his guilt by introducing rebuttal witnesses without notice, without facilitating to secure evidence to impeach rebuttal witnesses, without permitting to conduct through cross-examination, ignoring irrefutable evidence establishing rebuttal witnesses retaliation of Plaintiff for filing civil suit against them, punishing Plaintiff for exercising right to petitioning and refusing to seal asylum application and its supporting testimony, violated Plaintiff's due process right for fair-hearing.

138. On March 28, 2017 BIA directed Plaintiff to file his Brief by April 18, 2017. Thereafter, on April 05, 2017 and April 10, 2017, Plaintiff requested BIA to extend 90 days' time file his brief, because he will be transported out-of SCI-Pine Grove and during that he wouldn't have timely access to legal mail; and don't have access to immigration case-law, transcripts and pleadings in removal proceedings; and Plaintiff is awaiting response to requests for counseled legal representation; and awaiting responses to

FOIA & RTKL requests for immigration case-law and exculpatory evidence.

139. On April 09, 2017, BIA extended deadline twenty-one(21) days until May 09, 2017. On May 03, 2017 and June 07, 2017, Plaintiff requested BIA to extend time to file his brief, because between April 05, 2017 and July 01, 2017, Plaintiff has been moved-in and out-of SCI-Pine Grove, SCI-Graterford and Philadelphia Prison System several times and don't have timely access to legal mail, and didn't have access to transcripts, and pleadings in immigration matter and immigration case-law. But BIA denied these requests, stating Plaintiff didn't present extraordinary circumstances.

140. On May 01, 2017, Defendant Withrow emboldened by Defendant Durling's bad faith behavior towards Plaintiff, advocated for summary dismissal of Plaintiff's appeal at BIA, where removal order is predicated upon non-final conviction that deprive jurisdiction for Defendant Durling to enter removal order.

141. On June 28, 2017, Plaintiff mailed Motion to Dismiss Charges to BIA, because his conviction isn't final. But on July 07, 2017, Defendant Pauley ignored this motion and dismissed Plaintiff's appeal by ruling Plaintiff's conviction is final (when it is not), and affirmed Defendant Durling's removal order issued without jurisdiction by stating, "Although the respondent

challenges the finality of his conviction, he does not contest his removability. We consider the respondent's removability settled, and do not revisit that finding here", despite Plaintiff's Notice of Appeal prominently stated that, under categorical and modified categorical approach conviction under *18 Pa. C.S.A. § 2709.1* don't constitute "crime of stalking" under *INA § 237(a)(2)(E)(i)*.[28]

142. On July 19, 2017 and August 20, 2017, Plaintiff filed Motion to Reopen and Terminate Removal Proceedings in BIA, because conviction isn't final.

143. On October 10, 2017, Defendant Guendelsberger, reopened removal proceedings and administratively closed proceedings pending resolution of Plaintiff's direct appeal from April 25, 2014 sentence on Case-4, and refused to terminate removal proceedings and refused to direct ICE to lift detainer against Plaintiff.[29]

---

28. Immediately, Plaintiff filed Petition for Review (Case No:17-2091) in U.S. Court of Appeals for Third Circuit from Defendant Pauley' July 07, 2017 illegal order affirming Defendant Durlings' February 07, 2017 removal order issued without jurisdiction.

29. Immediately, Plaintiff filed Petition for Review (Case No:17-2620) in U.S. Court of Appeals for Third Circuit from Defendant Guendelsberger's October 10, 2017 order administratively closing removal proceedings and refusing to terminate proceedings.

144. On October 10, 2017, Plaintiff filed anew Motion to Reopen and Terminate Proceedings, because conviction under *18 Pa. C.S.A. § 2709.1(a)(1)* isn't a "crime of stalking" under *INA § 237(a)(2)(E)(i)*, and Defendant Guendelsberger ignored this motion.

145. On December 22, 2018, Plaintiff mailed Application to Continue Administrative Closure, because his conviction isn't final until U.S. Supreme Court denies a writ of certiorari, and therefore immigration court lacked jurisdiction to imposing immigration consequences upon non-final conviction. On December 27, 2018, Plaintiff mailed Response to Defendant's Mary Ellen Withrow's' Motion to Recalnder to BIA.

146. On February 14, 2019, Plaintiff mailed Motion to Expedite disposition of Application to Continue Administrative Closure and Motion to Recalnder and Reinstate Removal Order by listing questions directly relate to his innocence and structural errors in criminal proceedings that he raised in Petition for Allowance of Appeal in Supreme Court of Pennsylvania.

147. On March 17, 2019, Plaintiff Application to Terminate Removal Proceedings, by citing the recent BIA holding of Matter of Sanchez-Lopez, 27 I.&N. Dec. 256 (BIA 2018) (Sanchez-Lopez II), to show why Defendant Durling wantonly misapplied the BIA's definition of "stalking" to the Pennsylvania Stalking Statue at issue in his case and argued conviction

under *18 Pa. C.S.A. § 2709.1(a)(1)* isn't a "crime of stalking" under INA § 237(a)(2)(E)(i).

148. On April 9, 2019, Defendant Guendelsberger denied motion to terminate and reinstated BIA's earlier 2017 decision upholding Plaintiff's removal, stating "Assuming respondent filed petition for allowance of appeal with Supreme Court of Pennsylvania, the respondent did not present evidence that the appeal would relate to the issue of guilt or innocence or concerns a substantive defect in criminal proceedings as required in Matter of J.M.Acosta, 27 I&N Dec. 420, 432 (BIA 2018)"[30] and *"respondent did not contest his removability on appeal and therefore this issue was waived and we did not and do not revisit this matter".*[31]

149. Immediately, Plaintiff filed Petition for Review (Case No:19-1848) in U.S. Court of Appeals for Third Circuit from Defendant Guendelsberger's wanton refusal to terminate removal proceedings.

---

30.    Plaintiff's Motion to Expedite lists questions raised in petition for allowance of appeal are directly relate to his innocence and structural errors in criminal proceedings.

31.    Plaintiff's Notice of Appeal explicitly stated that, under categorical and modified categorical approach conviction under *18 Pa. C.S.A. § 2709.1* don't constitute "crime of stalking" under *INA § 237(a)(2)(E)(i)*.

150. On April 11, 2019, Plaintiff mailed Motion for Reconsideration, because his conviction isn't final; and on August 03, 2019 mailed Motion to Reopen and Terminate Removal Proceedings, because conviction under *18 Pa. C.S.A. § 2709.1(a)(1)* isn't a "crime of stalking" under INA § 237(a)(2)(E)(i).[32]

151. On August 12, 2019, Defendant Guendelsberger rebuffed Plaintiff again, stating that there was no "factual or legal error in our prior decision or any aspect of the respondent's case that was overlooked." Immediately, Plaintiff filed Petition for Review (Case No:19-2904) in U.S. Court of Appeals for Third Circuit from Defendant Guendelsberger's wanton refusal to terminate removal proceedings.

152. On September 3, 2019, Plaintiff asked, for a fourth time, on the merits in anew motion to reopen and terminate removal proceedings, because his notice of appeal clearly asserted that, "under categorical and modified categorical approach conviction under *18 Pa. C.S.A. § 2709.1* don't constitute "crime of stalking" under *8 U.S.C. § 1227(a)(2)(E)(i)*; and under *Sanchez-Lopez II*, Pennsylvania Courts apply *18 Pa. C.S.A. § 2709.1* to

32. On June 21, 2019, Plaintiff filed Motion to Stay Removal; and same day U.S. Court of Appeals for Third Circuit temporarily granted stay of removal until Court can consider the motion for stay of removal. On December 19, 2019, U.S. Court of Appeals for Third Circuit granted Plaintiff' Motion for a stay of removal.

conduct falling outside the definition of a "crime of stalking" outlined in *Sanchez-Lopez I.*

153. On May 04, 2020, Defendant Gemoets wantonly failed to acknowledge that Defendants Pauley and Guendelsberger wantonly held that Plaintiff did not contest his removability on appeal—and refused to terminate removal proceedings stating that Plaintiff did not establish a substantial likelihood that the result in his case would be changed if the proceedings reopened. [33]

154. On August 24, 2022, Third Circuit Court, issued a precedential opinion in Vurimindi v. Atty' Gen., Case No. 19-1848 & 19-2904, and held Plaintiff's conviction under *18 Pa. C.S.A. § 2709.1(a)(1)* is not "crime of stalking" under *8 U.S.C. § 1227(a)(2)(E)(i)* as defined by BIA in Sanchez-Lopez I; and vacated Defendant Pauley's July 07, 2017, and Defendant Guendelsberger's April 09, 2019, orders affirming Defendant Durling's February 7, 2017, removal order, and remand to BIA for further proceedings consistent with this opinion.

155. On September 13, 2022, BIA give notice of pending federal court

---

33. Immediately, Plaintiff filed Petition for Review (Case No: 20-2027) in U.S. Court of Appeals for Third Circuit from Defendant Marcos Gemoets 's wanton refusal to terminate removal proceedings; and later withdrawn to expedite pending Petition for Review(s) in Case Nos: 19-1848 & 19-2904.

remand; and on November 01, 2022, give notice of federal court remand informing both Plaintiff and ICE that BIA will place the case on its docket; and Plaintiff understood from notice of federal court remand that BIA would administratively close removal proceedings, so, for the fifth time, Plaintiff filed a motion to terminate removal proceedings in BIA, because Third Circuit Court vacating Defendant Pauley's July 07, 2017, and Defendant Guendelsberger's April 09, 2019, orders affirming Defendant Durling's February 7, 2017, removal order, Plaintiff automatically recaptured his lost LPR status and need not seek any other reliefs in immigration court.

156. But ICE didn't respond; and when Plaintiff contacted Defendants McLane and Doyle, Plaintiff received an email from OPLA-York-DutyAttorney@ice.dhs.gov stating "It does not appear that DHS filed a response to your motion within 13 days. Per the BIA practice manual and regulations, the BIA will view your motion as unopposed. BIA Practice Manual 5.11".

157. On March 09, 2023, BIA requested for supplemental briefing on Plaintiff's Motion to Terminate Removal Proceedings; and on March 22, 2023, Plaintiff mailed supplemental brief in support of terminating removal proceedings.

158. On March 28, 2023, ICE without responding to Plaintiff's Motion to Terminate Removal Proceedings, filed Motion to Dismiss its September 23, 2015, NTA without prejudice under *8 C.F.R. § 1239.2(c)*, stating Plaintiff is not deportable or inadmissible under immigration laws, See *8 C.F.R § 239.2(a)(2)* and Circumstances of the case have changed after the notice to appear was issued to such an extent that continuation is no longer in the best interest of the United States government. See *8 C.F.R § 239.2(a)(7)*.

159. ICE Motion to Dismiss its September 23, 2015, NTA without prejudice is to render eight long years of oppressive removal proceedings without final judgment, despite both (and all) charges of removability in the September 23, 2015, NTA under *8 U.S.C. § 1227(a)(2)(A)(iii)* and *8 U.S.C. § 1227(a)(2)(E)(i)* were effectively dismissed with prejudice, and Plaintiff will remain in removal proceedings for foreseeable future allowing ICE to forum shop to bring successive removal proceeding based upon Plaintiff's same conviction under *18 Pa. C.S.A. § 2709.1(a)(1)*, to drag Plaintiff into anew oppressive removal proceeding to worn-him-out — to make him to voluntarily concede his removability.

160. On April 20, 2023, Defendant O'Connor punished Plaintiff for exercising his U.S. Constitutional right to access courts, by terminating

removal proceedings <u>without prejudice</u>, rendering eight long years of oppressive removal proceedings, without final judgment.

161. Defendant O'Connor termination of removal proceedings without prejudice, is open dated option for ICE to commence new removal proceedings anytime until Plaintiff' death under same nucleus of operative fact of Plaintiff's conviction under *18 Pa. C.S.A. § 2709.1* and <u>18 Pa. C.S.A. § 5503</u> as and when future United States Congress provide new grounds for removability applied retroactively.

162. On May 16, 2023 Plaintiff filed Motion to Reconsider from Defendant O'Connor refusal to terminate removal proceeding with prejudice under *8 C.F.R. § 1003.2(b)*, because ICE is collaterally, judicially and equitably estopped to commence anew iteration of removal proceeding under anew section of INA on same nucleus of operative fact of Plaintiff's conviction under *18 Pa. C.S.A. § 2709.1* and *18 Pa. C.S.A. § 5503* and relieve him from the lingering fear of new removal proceeding under same nucleus of operative fact in the future, such that he could focus on restructuring his life. Defendant O'Connor didn't dispose this Motion to Reconsider.

### DOJ Defendants Bad Faith

163. Defendant Victoria Braga represented United States government in

Plaintiff's Petition for Review(s) Case No.: 17-2091, 17-2620, 19-1848, 19-2904, 20-2027, 22-3279, and 23-1334, and in all these cases, Defendant Victoria Braga in bad faith filed pleadings by misstating procedural history facts and law with one and only goal to deport Plaintiff, despite decades of U.S. Supreme Court law on conviction finality and categorical approach both dictates Plaintiff's conviction is not final and he is not convicted of "crime of stalking" to impose immigration consequences.

164. The legal frame-work for categorical or modified categorical analysis isn't a rocket science and it is within realm of DHS and DOJ employees (Prosecutors, Immigration Judges and BIA Members). But, they often overreach and charge non-citizens as removable under being convicted of "crime of domestic violence", "crime of stalking", "crime of child abuse, child neglect, or child abandonment", "aggravated felony" or "crime of violence"; and detain them for years, despite they knew that they cannot legally remove those noncitizens. In many cases, non-citizens knew that they aren't removable, but unable to endure years of detention, concede removability and suffer from deportation.

165. However, numerous non-citizens like Plaintiff who challenge their removability, endure years of detention, and finally obtain relief from United States Court of Appeals. See eg., *Barbosa v. Att'y Gen.*, 919 F.3d 1169

(9th Cir. 2019)(Non-citizen's robbery conviction under Or. Rev. Stat. § 164.395 was not categorically a crime involving moral turpitude (CIMT)); *Monteon-Camargo v. Att'y Gen.*, 2019 U.S. App. LEXIS 12720 (5th Cir. 2019)(Non-citizen's conviction for attempted theft from a person under *Texas Penal Code § 31.03.1* was not categorically a CIMT; and BIA's modified definition of CIMTs as announced in Diaz-Lizarraga (2016) cannot be applied retroactively); *Hernandez v. Att'y Gen.*, 914 F.3d 430 (6th Cir. 2019)(Non-citizen's conviction for felonious assault under Mich. Comp. Laws § 750.82 was not CIMT); *Harbin v. Att'y Gen.*, 860 F.3d 58 (2d Cir. 2017)(Non-citizen's conviction for possession of a controlled substance in the fifth degree under N.Y.P.L. § 220.31 does not constitute the commission of an aggravated felony for immigration purposes).

166. Likewise, there are 100's of published and non-published United States Court of Appeals opinions, stating numerous non-citizens predicate convictions aren't categorically "crime of domestic violence", "crime of stalking", "crime of child abuse, child neglect, or child abandonment", "aggravated felony" or "crime of violence" and therefore those non-citizens aren't removable.

167. A simple search of United States Court of Appeals opinions, establish that the DHS and DOJ employees overreaching and harassing non-citizens

76/103

is endemic, and it is continuing because DHS and DOJ employees cloaked under various immunities and non-citizens lack adequate statutory or legal remedies to file civil rights actions against those bad DHS and DOJ employees and obtain monetary compensation for unlawful detention.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
(Fifth Amendment to the U.S. Constitution / Due Process)
(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)
(Against Defendants Decker, Ritchey, Ervin, Agent#7627, Hoffman, J.Ried, Wright, Rife, Pinosa, Elova, John-Doe[34], Bible, Correa, ICE Does 1-10, Bubier, Gaffney, Withrow, Braga, Mclane, and Doyle)

168. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 of this Complaint.

169. By illegally, arbitrarily, and capriciously detaining Plaintiff for over a decade to make him to voluntarily concede his removability and obtain multiple wrongful deportation orders, obtaining travel documents, shackle and roll him into airplane to deport him to India, Defendants Decker, Ritchey, Ervin, Agent#7627, Hoffman, J.Ried, Wright, Rife, Pinosa, Elova, John-Doe, Bible, Correa, and/or the ICE Doe Defendants deprived Plaintiff of his constitutional right to liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. Defendants Bubier,

---

34.  ICE Field Office Director, Mississippi.

Gaffney, Withrow, Braga, Mclane, and Doyle (Collectively called "Government Attorneys"), aided and abetted illegal, arbitrary and capricious conduct of ICE Defendants to deprive Plaintiff of his liberty and/or caused Plaintiff to be deported without reasonable basis or lawful authority.

170.    Defendants Decker, Ritchey, Ervin, Agent#7627, Hoffman, J.Ried, Wright, Rife, Pinosa, Elova, John-Doe, Bible, Correa, Government Attorneys and/or the ICE Doe Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

171. ICE Defendants Decker, Ritchey, Ervin, Agent#7627, Hoffman, J.Ried, Wright, Rife, Pinosa, Elova, John-Doe, Bible, Correa and/or the ICE Doe Defendants' and Government Attorneys—Bubier, Gaffney, Withrow, Braga, Mclane, and Doyle' conduct violated clearly established constitutional or other rights of which these ICE Defendants and Government Attorneys knew, or of which a reasonable public official should have known.

172. These ICE Defendants and Government Attorneys' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard

for, or deliberate indifference to, Plaintiff's personal safety, security, freedom, and civil and constitutional rights.

173. These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff has suffered economic damages and significant physical and emotional harm.

**SECOND CLAIM FOR RELIEF**
(Fifth Amendment to the U.S. Constitution / Equal Protection)
(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)
(Against Defendants Decker, Ritchey, Ervin, Agent#7627, Hoffman, J.Ried, Wright, Rife, Pinosa, Elova, John-Doe, Bible, Correa, ICE Does 1-10, Bubier, Gaffney, Withrow, Braga, Mclane, and Doyle)

174. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 of this Complaint.

175. By illegally, arbitrarily, and capriciously detaining Plaintiff for over a decade to make him to voluntarily concede his removability and obtain multiple wrongful deportation orders, obtaining travel documents, shackle and roll him into airplane to deport him to India, ICE Defendants and Government Attorneys deliberately and unconstitutionally discriminated against Plaintiff on the basis of his race and ethnicity so as to deny him equal protection of the law in violation of the Fifth Amendment to the United

States Constitution.

176. ICE Defendants Decker, Ritchey, Ervin, Agent#7627, Hoffman, J.Ried, Wright, Rife, Pinosa, Elova, John-Doe, Bible, Correa and Government Attorneys—Bubier, Gaffney, Withrow, Braga, Mclane, and Doyle and certain other named unknown ICE Doe Defendants acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations. ICE Defendants and Government Attorneys acted with the intent or purpose to discriminate against Plaintiff.

177. These ICE Defendants and Government Attorneys' conduct violated clearly established constitutional or other rights of which these ICE Defendants and Government Attorneys knew, or of which a reasonable public official should have known.

178. These ICE Defendants and Government Attorneys' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Plaintiff's personal safety, security, freedom, and civil and constitutional rights.

179. These violations are compensable under *Bivens v. Six Unknown*

*Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff suffered economic damages and significant physical and emotional harm.

**THIRD CLAIM FOR RELIEF**
(Fourth Amendment to the U.S. Constitution)
(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)
(Against Defendants Decker, Ritchey, Ervin, Agent#7627, Hoffman, J.Ried, Wright, Rife, Pinosa, Elova, John-Doe, Bible, Correa, ICE Does 1-10, Bubier, Gaffney, Withrow, Braga, Mclane, and Doyle)

180. Plaintiff realleges and incorporates herein by reference each and very allegation contained in paragraphs 1 through 167 of this Complaint.

181. ICE Defendants Decker, Ritchey, Ervin, Agent#7627, Hoffman, J.Ried, Wright, Rife, Pinosa, Elova, John-Doe, Bible, Correa and Government Attorneys—Bubier, Gaffney, Withrow, Braga, Mclane, and Doyle and certain other named unknown ICE Doe Defendants intentionally detained Plaintiff in violation of his constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

182. These ICE Defendants and Government Attorneys acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

81/103

183. These ICE Defendants and Government Attorneys' conduct violated clearly established constitutional or other rights of which ICE Defendants and Government Attorneys knew, or of which a reasonable public official should have known.

184. These ICE Defendants and Government Attorneys' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Plaintiff's personal safety, security, freedom, and civil and constitutional rights.

185. These violations are compensable under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff has suffered economic damages and significant physical and emotional harm.

**FOURTH CLAIM FOR RELIEF**
(Fifth Amendment to the U.S. Constitution / Due Process; The Immigration and Nationality Act; Section 504 of The Rehabilitation Act of 1973)
(Damages and Injunctive Relief to Protect
Mentally Disabled Persons from Illegal Deportation)
(Against Defendants Mayorkas, Neal, Cheng, Lechleitner, Hott, Mcnulty, Weiss, and Wetmore)

186. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 of this Complaint.

187. As Secretary of the Department of Homeland Security, Defendant Mayorkas is charged with the operation of a Federally-funded government agency under 29 U.S.C. § 794.

188. As Director of U.S. Immigration and Customs Enforcement, Defendant Lechleitner is charged with the operation of a Federally funded government agency under 29 U.S.C. § 794.

189. As the Director of the Office of Detention and Removal within ICE, Defendant Hott is charged with the operation of a Federally-funded government agency under 29 U.S.C. § 794.

190. As Director and Asst. Director of the Executive Office of Immigration Review, Defendants Neal and Cheng are charged with the operation of a Federally-funded government agency under 29 U.S.C. § 794.

191. As Chief Immigration Judges, and Chief Appellate Immigration Judge of the Executive Office of Immigration Review, Defendants Mcnulty, Weiss, and Wetmore are charged with the operation of a Federally-funded government agency under 29 U.S.C. § 794.

192. Plaintiff qualifies as an "individual with a disability" under 29 U.S.C. § 705 and 42 U.S.C. § 12102 by virtue of his significant cognitive disorders and mental disabilities apparent on I-213 stating "The subject was ordered

to be supervised under the Mental Health Unit while in the custody of the Pennsylvania Department of Corrections".

193. Section 504 of the Rehabilitation Act makes it unlawful to discriminate against an individual with a mental disability by denying that individual the benefits and protections afforded other non-disabled individuals.

194. These Defendants had a duty under Section 504 of the Rehabilitation Act to promulgate, implement and maintain adequate policies and safeguards to protect against discrimination against individuals with mental and developmental disabilities in the provision of their services and to ensure that the personal and civil rights of individuals receiving services while in the custody of the federal government or its designated agent are protected.

195. The Due Process Clause requires that all people, including individuals with mental disabilities like Plaintiff, receive fair hearings when placed in proceedings for removal from the United States.

196. The Immigration and Nationality Act's requirement that all people in removal proceedings be afforded a reasonable opportunity to examine and present evidence and witnesses, see *8 U.S.C. 1229a(b)(4)(B)*, requires that unrepresented individuals who are not mentally competent to represent

themselves be afforded appointed counsel in their immigration detention and removal proceedings, if they are unable to secure counsel by other means.

197. These Defendants' failure to provide adequate and meaningful safeguards for people with mental disabilities in the immigration detention and court systems resulted in his misidentification as a criminal alien by ICE and Government Attorneys and, further, denied Plaintiff a fair hearing.

198. Defendants' failure to provide adequate and meaningful safeguards such as a right to counsel in immigration court for people with mental disabilities violates the INA's requirement that respondents have a reasonable opportunity to present evidence in court.

199. These Defendants' failure to provide intake and processing safeguards resulted in the unlawful and unconstitutional presumption that Plaintiff was a criminal alien, and ultimately led to his deportation.

200. These Defendants' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Plaintiff's mental disability.

201. These Defendants' refusal and failure to promulgate and implement

policies and procedures to adequately identify and assess individuals with mental disabilities and to provide those individuals with sufficient legal guidance and protections while in federal custody and subject to interrogation and judicial or quasi-judicial proceedings constitute discrimination in violation of Section 504 of the Rehabilitation Act, resulting in Plaintiff's unconstitutional and unlawful removal from the United States.

202. These violations are compensable under Section 505 of the Rehabilitation Act, and Plaintiff is entitled to actual, compensatory and punitive damages as a direct and proximate result of the unlawful actions of these Defendants, which caused Plaintiff irreparable injury.

203. In light of the fact that Plaintiff's mental disability has caused or contributed to his incarceration and detention in the past on more than one occasion, and in light of the fact that Plaintiff was erroneously identified as a criminal alien and obtained deportation order from the United States on more than one occasion, Plaintiff has suffered and is likely to again suffer irreparable injury, and is entitled to injunctive relief to avoid further injury.

## FIFTH CLAIM FOR RELIEF
(Fifth Amendment to the U.S. Constitution / Due Process)
(Injunctive Relief Sought to Protect Lawful Permanent Residents from Illegal Deportation)
(Against Defendants Mayorkas, Neal, Cheng, Lechleitner, Hott Mcnulty, Weiss, and Wetmore)

204. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 of this Complaint.

205. The Due Process Clause requires that Lawful Permanent Residents of the United States of America be afforded adequate safeguards against unlawful removal from the country, including procedures reasonably calculated to verify the finality of the criminal conviction and removability of Lawful Permanent Residents based upon that conviction in state or federal custody.

206. These Defendants' failure to provide adequate training, procedures and meaningful safeguards to verify the finality of the criminal conviction and removability of Lawful Permanent Residents based upon that conviction during preparation of I-213 and issuing NTA stages denied Plaintiff of his constitutional right to liberty without due process of law. Such safeguards are especially warranted where, as here, the detainee expressly claims that his conviction is not final and conviction is neither "crime of stalking" not "crime of violence" and Case-4 dockets are available to the ICE that would verify the finality of the conviction and removability based upon that conviction of Plaintiff.

207. These Defendants' failure to provide training for intake and processing safeguards resulted in the unlawful and unconstitutional

presumption that Plaintiff is non-citizen criminal alien and ultimately led to his decade long detention and several attempts to deport him from United States.

208. As a result of the patently inadequate procedures in which Plaintiff was incorrectly labeled as non-citizen criminal alien with final removable conviction, Plaintiff suffered irreparable injury.

209. In light of the fact that Plaintiff was erroneously identified as a non-citizen criminal alien with final removable conviction led to his decade long detention and several attempts to deport him from United States, Plaintiff has suffered and is likely to again suffer irreparable injury, and is entitled to injunctive relief to avoid further injury.

### SIXTH CLAIM FOR RELIEF
(Fifth Amendment to the U.S. Constitution / Due Process)
(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)
(Against Defendants Durling, Pauley, Guendelsberger, Gemoets, and O'Connor)

210. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 of this Complaint.

211. Defendants Durling, Pauley, Guendelsberger, Gemoets, and O'Connor (Collectively called "Administrative Adjudicators") knew that in U.S. Court of Appeals for Third Circuit jurisdiction, a final conviction is a

jurisdictional prerequisite to impose immigration consequences. See *United States v. Allen*, 566 F.2d 1193   (3d Cir. 1977)(citing, *United States v. Noland*, 495 F.2d 529 (5th Cir. 1974)(It has been held that strict compliance with the legislatively mandated pretrial filing requirement is a jurisdictional prerequisite to the imposition of an enhanced sentence, even when the particular failure did not prejudice the defendant.).

212. In addition Administrative Adjudicators knew that in *Orabi v. Att'y Gen.*, 738 F.3d 535 (3d Cir. 2014)(citing, *Matter of Ozkok*, 19 I&N Dec. 546, n.7 (BIA 1988)) Third Circuit Court held that, "a conviction does not attain a sufficient degree of finality for immigration purposes until direct appellate review of the conviction has been exhausted or waived." Id. 738 F.3d at 543; and *Orabi* didn't distinguish between direct appeal as of right and discretionary direct appeal; and under Pennsylvania law, Plaintiff's conviction become final only after United States Supreme Court rule upon his Petition for a Writ of Certiorari, See *Sistrunk v. Rozum*, 674 F.3d 181 (3d Cir. 1999), citing *Kapral v. United States*, 166 F.3d 565 (3d Cir. 1999) (petitioner's conviction became final when petitioner's deadline for filing a petition for certiorari in the United States Supreme Court passed); and *Pa. Const. Art. V § 9* guarantee right of appeal in all cases, and Due Process Clause protects this guaranteed constitutional right. *Evitts v. Lucey*, 469

U.S. 387 (1985).

213. In addition Administrative Adjudicators knew that they have no expertise in identifying the elements of state statutes or interpreting state law,[35] to determine whether a non-citizen was convicted of "crime of domestic violence", "crime of stalking", "crime of child abuse, child neglect, or child abandonment" under *INA § 237(a)(2)(E)(i)*; aggravated felony under INA §§ 237(a)(2)(A) & 101(a)(43); or "crime of violence" under *8 U.S.C. § 16,* and still usurped subject matter and personal jurisdiction over Plaintiff, without fulfilling minimum jurisdictional prerequisites to deport Lawful Permanent Resident to India.

214. In addition Administrative Adjudicators knew that, on I-213 state "The subject was ordered to be supervised under the Mental Health Unit while in the custody of the Pennsylvania Department of Corrections", and yet

---

35. See *Barbosa v. Att'y Gen.*, 919 F.3d 1169 (9th Cir. 2019)(citing, *Castrijon-Garcia v. Att'y Gen.*, 704 F.3d 1205 (9th Cir. 2013)(BIA has no expertise by virtue of its statutory responsibilities in construing state or federal criminal statutes. Id. at 1208); but not to its reading of an underlying criminal statute (as to which it has no expertise). *Patel v. Att'y Gen*, 707 F.3d 77 (1st Cir. 2013)(same); *Gill v. INS.*, 420 F.3d 82 (2d Cir. 2005) (same); *Jean-Louis v. Att'y Gen.*, 582 F.3d 462 (3d Cir. 2009)(same); *Ramirez v. Att'y Gen.*, 887 F.3d 693 (4th Cir. 2017)(same); *Omagah v. Att'y Gen.*, 288 F.3d 254 (5th Cir. 2002)(same); Patel v. Att'y Gen., 401 F.3d 400 (6th Cir. 2005)(same); *Zivkovic v. Att'y Gen.*, 724 F.3d 894 (7th Cir. 2013) (same); *Franklin v. INS*, 72 F.3d 571 (8th Cir. 1995)(same).

deprived Plaintiff the requested safeguards (appointment of counsel) or reasonable accommodations (continue proceedings until Plaintiff secure counsel) and railroaded Plaintiff's repeated requests to use subpoena power to secure evidence in Plaintiff's favor and refused to facilitate him to fully and fairly participate in proceedings. See *Matter of M-A-M-*, 25 I&N Dec. at 480 ("Even if an alien has been deemed medically competent, there may be cases in which an IJ has good cause for concern about the ability to proceed, such as where the respondent has a long history of mental illness, has an acute illness, or was restored to competency, but there is reason to believe that the condition has changed. In such cases, IJs should apply appropriate safeguards."); accord *Matter of J-R-R-A*, 26 I. & N. Dec. 609, 611–12 (BIA 2015).

215. Administrative Adjudicators, knew Plaintiff is Lawful Permanent Resident and is not convicted to impose immigration consequences, and yet entered multiple removal order(s), to aide and abet ICE Defendants and Government Attorneys' illegal, arbitrary and capricious conduct of detaining Plaintiff for over a decade to make him to voluntarily concede his removability.

216. Administrative Adjudicators, are still aiding and abetting ICE Defendants and Government Attorneys' illegal, arbitrary and capricious

91/103

conduct to bring new removal proceedings against Plaintiff, even after Third Circuit Court determined that Plaintiff is not removable.

217. Administrative Adjudicators, deprived Plaintiff of his constitutional right to liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. Administrative Adjudicators, deprived him of his liberty and/or caused Plaintiff to be deported without reasonable basis or lawful authority.

218. Administrative Adjudicators, in complete absence of all jurisdiction, acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

219. Administrative Adjudicators, conduct violated clearly established constitutional or other rights of which these defendants knew, or of which a reasonable public official should have known.

220. Administrative Adjudicators' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Plaintiff's personal safety, security, freedom, and civil and constitutional rights.

221. These violations are compensable under *Bivens v. Six Unknown*

*Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff has suffered economic damages and significant physical and emotional harm.

## SEVENTH CLAIM FOR RELIEF
(Fifth Amendment to the U.S. Constitution / Equal Protection)
(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)
(Against Defendants Durling, Pauley, Guendelsberger, Gemoets, and O'Connor)

222. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 and 211 through 215 of this Complaint.

223. Administrative Adjudicators deliberately and unconstitutionally discriminated against Plaintiff on the basis of his race and ethnicity so as to deny him equal protection of the law in violation of the Fifth Amendment to the United States Constitution.

224. Administrative Adjudicators acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations. Administrative Adjudicators acted with the intent or purpose to discriminate against Plaintiff.

225. These Administrative Adjudicators' conduct violated clearly

93/103

established constitutional or other rights of which these Administrative Adjudicators knew, or of which a reasonable public official should have known.

226. These Administrative Adjudicators' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Plaintiff's personal safety, security, freedom, and civil and constitutional rights.

227. These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff suffered economic damages and significant physical and emotional harm.

**EIGHTH CLAIM FOR RELIEF**
(Fourth Amendment to the U.S. Constitution)
(Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics)
(Against Defendants Durling, Pauley, Guendelsberger, Gemoets, and O'Connor)

228. Plaintiff realleges and incorporates herein by reference each and very allegation contained in paragraphs 1 through 167 and 211 through 215 of this Complaint.

229. Administrative Adjudicators aided and abetted ICE Defendants and

94/103

Government Attorneys' intentional detention of Plaintiff in violation of his constitutional right to be free from unreasonable seizures, as guaranteed by the Fourth Amendment to the United States Constitution.

230. These Administrative Adjudicators acted under color of law and acted or purported to act in the performance of official duties under federal, state, county, or municipal laws, ordinances, or regulations.

231. These Administrative Adjudicators' conduct violated clearly established constitutional or other rights of which Administrative Adjudicators knew, or of which a reasonable public official should have known.

232. These Administrative Adjudicators' actions, omissions, policies, patterns, practices, and customs, as complained of herein, were intentional and reckless and demonstrate a callous disregard for, or deliberate indifference to, Plaintiff's personal safety, security, freedom, and civil and constitutional rights.

233. These violations are compensable under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). As a direct and proximate result of the unlawful actions of these Defendants, Plaintiff has suffered economic damages and significant physical and

emotional harm.

## NINTH CLAIM FOR RELIEF
(False Imprisonment)
(Federal Torts Claim Act)
(Against Defendant United States of America)

234. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 and 211 through 215 of this Complaint.

235. ICE Defendants, Government Attorneys and Administrative Adjudicators intentionally and unlawfully deprived Plaintiff of his liberty by (1) lodging detainer against his release from Pennsylvania Department of Correction upon completion of minimum 2.5 years sentence; (2) Issuing NTA and charging him as removable; (3) multiple times wrongfully obtaining deportation order; (4) obtaining travel document; (5) shackling, and roll him into airplane to deport him to India; (6) detaining him for over a decade to make him to voluntarily concede his removability.

236. These ICE Defendants, Government Attorneys and Administrative Adjudicators were acting within the scope of their employment when they committed these acts.

237. Plaintiff never consented to ICE's apprehension, arrest, detention, or deportation of him.

238. As a direct and proximate result of these ICE Defendants, Government Attorneys and Administrative Adjudicators' conduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial.

239. Plaintiff filed a claim with the Department of Homeland Security, Department of Justice and Executive Office of Immigration Review based on these injuries in accordance with the Federal Tort Claims Act. More than six (6) months passed since Plaintiff filed his FTCA claim with the Department of Homeland Security, Department of Justice and Executive Office of Immigration Review, and Plaintiff has received no response.

## TENTH CLAIM FOR RELIEF
(Negligence)
(Federal Torts Claim Act)
(Against Defendant United States of America)

240. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 and 211 through 215 of this Complaint.

241. ICE Defendants, Government Attorneys and Administrative Adjudicators breached their duty of reasonable care by negligently acting or failing to act in such a way that resulted in Plaintiff's wrongful detention and deportation by ICE, which these Defendants knew or should have known

posed a substantial risk of grave harm to Plaintiff.

242. ICE Defendants, Government Attorneys and Administrative Adjudicators were negligent in performing their duties and failed, neglected and/or refused to properly and fully discharge their responsibilities by, among other things:

1.    Failing to review readily available Case-4 dockets which states that Plaintiff's conviction is not final, and neither "crime of violence" nor "crime of stalking";

2.    Detaining him for over a decade to make him to voluntarily concede his removability;

3.    Failing to provide Plaintiff, who has a mental illness and/or mental disabilities, with assistance to of counsel during removal proceedings; and protect him from oppressive detention;

4.    Creating and/or sanctioning policies, patterns, practices, and customs of selecting inmates to detain, interrogate, and deport based on their race and/or ethnicity;

5.    Failing to adequately train and supervise personnel performing immigration duties; and

6.    Detaining, holding and deporting a Lawful Permanent Resident having non removable conviction.

243. These ICE Defendants, Government Attorneys and Administrative Adjudicators were acting within the scope of their employment when they committed these acts.

244. As a direct and proximate result of ICE Defendants, Government

Attorneys and Administrative Adjudicators' conduct, Plaintiff has suffered and continues to suffer damages in an amount to be proven at trial.

245. Plaintiff filed a claim with the Department of Homeland Security, Department of Justice and Executive Office of Immigration Review based on these injuries in accordance with the Federal Tort Claims Act. More than six (6) months passed since Plaintiff filed his FTCA claim with the Department of Homeland Security, Department of Justice and Executive Office of Immigration Review and Plaintiff has received no response.

## ELEVENTH CLAIM FOR RELIEF
(Intentional Infliction of Emotional Distress)
(Federal Torts Claim Act)
(Against Defendant United States of America)

246. Plaintiff realleges and incorporates herein by reference each and every allegation contained in paragraphs 1 through 167 and 211 through 215 of this Complaint.

247. ICE Defendants, Government Attorneys and Administrative Adjudicators' willful acts constitute outrageous conduct insofar as they were intended to cause Plaintiff to be held in ICE custody, interrogated, and expelled from the national borders of the United States.

248. ICE Defendants, Government Attorneys and Administrative Adjudicators intended to cause Plaintiff emotional distress, and/or acted in

reckless disregard of the likelihood of causing Plaintiff emotional distress, in committing these acts.

249. ICE Defendants, Government Attorneys and Administrative Adjudicators were acting within the scope of their employment when they committed these acts.

250. As a direct and proximate result of ICE Defendants, Government Attorneys and Administrative Adjudicators' acts, Plaintiff suffered and continues to suffer severe mental anguish and emotional and physical distress.

251. Plaintiff has incurred and continues to incur medical expenses and other damages in an amount to be proven at trial.

252. Plaintiff filed a claim with the Department of Homeland Security, Department of Justice and Executive Office of Immigration Review based on these injuries in accordance with the Federal Tort Claims Act. More than six (6) months passed since Plaintiff filed his FTCA claim with the Department of Homeland Security, Department of Justice and Executive Office of Immigration Review and Plaintiff has received no response.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1. For general damages against the United States, ICE Defendants, Government Attorneys and Administrative Adjudicators jointly and severally, in an amount to be proven at trial;

2. For special damages against the United States, ICE Defendants, Government Attorneys and Administrative Adjudicators jointly and severally, in an amount to be proven at trial;

3. For punitive and exemplary damages against the United States, ICE Defendants, Government Attorneys and Administrative Adjudicators jointly and severally, in an amount to be proven at trial;

4. Appoint Counsel and award reasonable attorneys' fees and costs pursuant to 28 U.S.C. § 2412;

5. For reasonable costs, expenses, and attorneys' fees pursuant to the Equal Access to Justice Act, *5 U.S.C. § 504, 28 U.S.C. § 2412*, 42 U.S.C. § 1988, 29 U.S.C. § 794a, and any other applicable state and federal law;

6. For injunctive relief against Defendants Mayorkas, Neal, Cheng,

Lechleitner, Hott, Mcnulty, Weiss, and Wetmore, requiring the Attorney General, the Executive Office of Immigration Review, and the Department of Homeland Security to promulgate safeguards and policies as set forth herein and to adequately train and supervise employees in order to safeguard the rights of Lawful Permanent Residents and persons with mental disabilities subject to detention and possible deportation; and

7.    For such other relief as the Court deems just, equitable and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on any and all issues triable by a jury.

Date: January 6, 2025

Respectfully Submitted,

*Vamsidhar Vurimindi*
Vamsidhar Vurimindi,
Plaintiff, Pro Se
821 Gunter Street
Austin, TX 78702

## VERIFICATION

I, Vamsidhar Vurimindi verify the statements made in ~~Petition for Naturalization~~, Complaint ~~for Declaratory, Mandamus, and Injunctive Reliefs~~ are true and correct. I understand false statements are subject to penalty under _28 U.S.C. § 1746_, relating to Unsworn declarations under penalty of perjury.

Date: January 6, 2025

Respectfully Submitted,

_Vamsidhar Vurimindi_

Vamsidhar Vurimindi,
Plaintiff, Pro Se
821 Gunter Street
Austin, TX 78702